## IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

| | |
|---|---|
| CIERRA DUNN, VERCHON DEBROSSARD, MICHAEL KLINGENBERG, MAKENZIE MOLER, and JAQUAN PATTON, individually and on behalf of all other similarly situated, | CASE NO. ___LACL149462___ |
| **Plaintiffs,** | |
| vs. | |
| JOHN DOE 1 – 60, TRUDY PAULSON, TYLER MOFFATT, JACOB HEDLUND, KYLE GRUVER, NICHOLAS VALENTINE, DEB VANVELZEN, JEREMY SPRAGUE, CLARK ALLEN, ERNESTO ESCOBAR HERNANDEZ, CHAD NICOLINO, JEFFREY GEORGE, BRADLEY YOUNGBLUT, SHAWNA ISAAC, JAKE FORRESTER, KIRK BAGBY, DANIEL BLOM, DANA WINGERT, and CITY OF DES MOINES, IOWA, | CLASS ACTION COMPLAINT and JURY DEMAND |
| **Defendants.** | |

**COME NOW** the Plaintiffs, individually and on behalf of all those similarly situated, by and through the undersigned counsel, and for their causes of action, respectfully state the following:

### PARTIES

1.     Plaintiff Cierra Dunn is a resident of Des Moines, Polk County, Iowa.

2.     Plaintiff Verchon Debrossard is a resident of West Des Moines, Polk County, Iowa.

1



3.    Plaintiff Matthew Klingenberg is a resident of Des Moines, Polk County, Iowa.

4.    Plaintiff Makenzie Moler is a resident of Mason City, Cerro Gordo County, Iowa.

5.    Plaintiff Jaquan Patton is a resident of Des Moines, Polk County, Iowa.

6.    Defendants John Doe 1 through 60 are believed to be citizens and residents of Iowa and were employed as a law enforcement officers with the Des Moines, Iowa Police Department and other local police departments at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendants John Doe 1 through 60 were made under the color of authority and law as law enforcement officers for their respective police departments. They are sued in their official and individual capacities. They are (along with the other individually named defendants) are henceforth collectively referred to as "Defendant Police."

7.    Defendant Trudy Paulson is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Trudy Paulson were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. She is sued in her official and individual capacities.

8.    Defendant Tyler Moffatt is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Altoona Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Tyler Moffatt were made under the color of authority

2

and law as a law enforcement officer for the Altoona, Iowa Police Department. He is sued in his official and individual capacities.

9.    Defendant Jacob Hedlund is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Jacob Hedlund were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

10.    Defendant Kyle Gruver is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Kyle Gruver were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

11.    Defendant Nicholas Valentine is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Nicholas Valentine were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

12.    Defendant Deb VanVelzen is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material

3

hereto, the actions and omissions of Defendant Deb VanVelzen were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. She is sued in her official and individual capacities.

13.    Defendant Jeremy Sprague is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Jeremy Sprague were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

14.    Defendant Clark Allen is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Clark Allen were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

15.    Defendant Ernesto Escobar Hernandez is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Ernesto Escobar Hernandez were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

16.    Defendant Chad Nicolino is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Chad Nicolino were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

17.    Defendant Jeffrey George is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Jeffrey George were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

18.    Defendant Bradley Youngblut is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Bradley Youngblut were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

19.    Defendant Shawna Isaac is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Shawna Isaac were made under the color

of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. She is sued in her official and individual capacities.

20.    Defendant Jake Forrester is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of West Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Jake Forrester were made under the color of authority and law as a law enforcement officer for the West Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

21.    Defendant Kirk Bagby is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Kirk Bagby were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

22.    Defendant Daniel Blom is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Daniel Blom were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

23.    Defendant Brandon Holtan is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material

6

hereto, the actions and omissions of Defendant Brandon Holtan were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

24.     Defendant Dana Wingert is believed to be a citizen and resident of Iowa and was employed as the Chief of Police of the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, Defendant Wingert's actions and/or omissions were made under the color of authority as the Chief of Police. He is sued in his official and individual capacities.

25.     Defendant City of Des Moines, Iowa is a municipal corporation organized and authorized to operate under the laws of Iowa and is located at 400 East First Street, Des Moines, Polk County, Iowa.  Defendant City is responsible for maintaining and operating the Des Moines Police Department.

## JURISDICTION AND VENUE

26.     Venue is proper in the District Court for Polk County pursuant to Iowa Code §669.4(1) as the district in which Plaintiffs resides and/or in which the acts and omissions complained of occurred.

27.     Subject matter jurisdiction of the District Court for Polk County is proper pursuant to Iowa Code § 602.6101.

28.     The amount in controversy exceeds the jurisdictional amount.

## GENERAL FACTUAL ALLEGATIONS

### I.   Background

29.     The disproportionate and excessive use of force against Black individuals by police officers in the United States is a well-documented, systemic problem. There is

7

a more general, but equally troubling, problem with disproportionate law enforcement against Black individuals.

30.     Iowa—and Des Moines specifically—are not immune to these problems.[1]

31.     On Monday, May 25, 2020, a Minneapolis police officer brutally murdered George Floyd, an unarmed and non-resisting Black man, by kneeling on his neck for at least eight minutes and forty-six seconds, while other police officers stood by and allowed it to happen.

32.     In the aftermath of Mr. Floyd's murder, hundreds of thousands of people assembled together throughout the United States to protest police brutality and systemic racism.

33.     One such protest took place the evening of May 30, 2020 in Des Moines, with activities continuing into the early morning hours of May 31, 2020.

---

[1] *See* https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/racial-profiling-iowa/31829419/;
https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/racial-profiling-iowa-police-policies/31795745/;
https://www.desmoinesregister.com/story/news/2018/10/17/black-lives-matter-des-moines-police-paul-parizek-plymouth-church-ako-abdul-samad-racism-inclusivity/1669216002/; https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/black-iowa-racial-profiling-studies/31787611/;
https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/black-iowa-racial-profiling-police/31787599/;
https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/racial-profiling-iowa/31795075/;
https://www.desmoinesregister.com/story/news/local/2015/07/10/black-iowa-conversations-videos/29966531/;
https://www.desmoinesregister.com/story/news/2014/11/19/blacks-arrest-rates-iowa-disparity/19250981/; https://www.desmoinesregister.com/story/news/crime-and-courts/2020/05/18/des-moines-approved-75-000-settlement-family-claiming-excessive-force/5213435002/; https://who13.com/news/mother-has-unfinished-business-despite-sons-racial-profiling-settlement-with-des-moines/amp/; https://www.aclu.org/press-releases/iowa-ranks-worst-nation-racial-disparities-marijuana-arrests;
https://www.sentencingproject.org/the-facts/#rankings?dataset-option=BWR.

34.    There was no curfew in effect during this period.

35.    Protesters gathered near the Polk County Courthouse around 9:30 p.m.

36.    Police responded to the corner of Cherry Street and 6th Avenue and stood in a line in front of the Polk County Criminal Courts building to ensure it was not damaged.

37.    One of the individuals in the area was Essence Welch, who was peacefully protesting and recording the events on her cell phone.

38.    Dozens more police responded to the corner of Cherry Street and 6th Avenue, surrounding the intersection.

39.    One of those officers, Des Moines Police Officer Daniel Dempsey, exited the vehicle he arrived in, stepped from behind a group of at least seven officers, walked several yards to where Ms. Welch was standing, and shot her with pepper spray directly in her face and down her body.

40.    Neither Dempsey, nor any of the other officers nearby, said anything to Ms. Welch prior to when Dempsey sprayed her.

41.    Dempsey and the other Defendant Police he arrived with proceeded to pepper-spray other individuals in the area.

42.    Defendant Police also deployed several tear gas canisters in the area, throwing some directly into crows of citizens who were peacefully protesting.

43.    Upon information and belief, the use of pepper-spray and tear gas was authorized by police supervisors.

44.    Defendant Police did not give the protesters a clear order to disperse prior to pepper-spraying individuals in the area and dispensing tear gas.

9

45.   The protesters responded by leaving the area and marching to the Iowa State Capitol.

46.   As the protesters walked down East Locust Street towards the Capitol, a police vehicle drove through the crowd, coming close to hitting several people.

47.   When the protesters arrived at the Capitol, they were met by police in riot gear.

48.   Though the group of the protesters at the Capitol was peacefully protesting and not engaged in any illegal activity, Defendant Police deployed multiple canisters of tear gas into the crowd.

49.   The protesters then marched away from the Capitol. Defendant Police harassed the protesters as they walked, continuing to pepper-spray and tear-gas individuals who were peacefully protesting.

50.   Police eventually herded the protesters to the Court Avenue bar district.

51.   Upon information and belief, Defendant Police did not station any officers in the vicinity of the Court Avenue bar district.

52.   Many people who had nothing to do with the protests were out enjoying themselves in the Court Avenue bar district.

53.   The protesters were not a well-organized or cohesive group. Many people were simply hanging out in the vicinity of the protesters, watching and socializing with friends.

54.   The protest also morphed over time into more of a party than a protest, with people socializing and dancing.

55.    Around 2:30 a.m., a number of people migrated West on Court Avenue. These individuals were not in any organized group, but were walking by themselves, in pairs, or in small groups of friends.

56.    Approximately five to ten individuals damaged property in the Court Avenue bar district area as they walked West on Court Avenue.

57.    Approximately five to ten people ended up by the downtown Hy-Vee and began attempting to break the windows around 2:35 a.m.

58.    Within a couple of minutes, those individuals broke into Hy-Vee and several individuals entered Hy-Vee.

59.    At approximately 2:37 a.m., dozens of police arrived at Hy-Vee, pulling up on the sidewalk at the corner of 4th Street and Court Avenue.

60.    When police arrived, the individuals who were breaking into Hy-Vee and those who were nearby immediately dispersed.

61.    Accordingly, once police arrived, there were no individuals unlawfully assembled near the Court Avenue bar area.

62.    Within a couple of minutes, dozens of officers arrived near Hy-Vee.

63.    Defendant Police proceeded to canvas the downtown area and arrest individuals, regardless of whether those individuals had anything to do with the vandalism downtown. Defendant Police arrested people who were not violating any laws or acting in a violent or threatening manner.

64.    Upon information and belief, no dispersal order was given to the individuals remaining in the downtown area.

65.    Several Defendant Police used pepper-spray indiscriminately on individuals who were lawfully in the area.

66.    Several of the people who were pepper-sprayed by Defendant Police in the early morning hours of May 31, 2020 were cowering from law enforcement at the time they were assaulted. Defendant Police were not using force for any legitimate purpose; they did not even attempt to arrest the individuals they pepper-sprayed.

67.    A Defendant Police officer kicked a man who was not violating any laws or acting in a violent or threatening manner. The man was cowering on the ground at the time the officer kicked him. A second Defendant Police officer struck that same man with a baton. Defendant Police were not using force for any legitimate purpose; they did not even attempt to arrest the man.

68.    A Defendant Police officer pepper-sprayed a man who was not violating any laws or acting in a violent or threatening manner, causing the man to collapse face-down into the street in pain. The officer was not using force for any legitimate purpose; he did not even attempt to arrest the man. At least eleven other officers observed the officer unnecessarily pepper-spray the man and did nothing to help the man as he laid in the street.

69.    Upon information and belief, officers were told that they did not have to complete a use of force report if they did not arrest someone. This does not comply with the Des Moines Police Department policy regarding use of force reports.

70.    By using excessive force, several Defendant Police officers committed the crime of assault against individuals who were doing nothing wrong.

71.    Upon information and belief, no officers have been criminally charged for their assault of those individuals.

72.    Upon information and belief, the vast majority of Defendant Police officers who used force against individuals in the early morning hours of May 31, 2020 did not complete an Arrest Incident Report detailing their use of force, which is a violation of Des Moines Police Department policy.

73.    When Defendant Police arrested the individuals who were doing nothing wrong, Defendant Police bound the individuals' wrists with zip-tie restraints in a manner tight enough to cut off circulation and leave lasting marks and injuries.

74.    Many of the arrestees were pepper-sprayed by police, causing them severe pain and burning. Defendant Police did not sufficiently wash the pepper-spray out of those individuals' eyes and the arrestees were forced to wait for over two hours in some cases before their eyes were rinsed properly.

75.    Many of the individuals complained that their restraints were painful but were given no relief from Defendant Police.

76.    Defendant Police forced members of the media to leave the downtown area so they could not observe and report the misdeeds of law enforcement.[2]

77.    Defendant Police illegally seized property belonging to several individuals.

78.    Defendant Youngblut illegally seized cell phones from Jayvione Lewis, Stefan Castaneda, Trent Schwab, Jaquan Patton, Tony Young, Verchon Debrossard, Jivonte Johnson, Cameron Lard, and Sean Robinson.

---

[2] See https://caffeinatedthoughts.com/2020/05/video-second-night-of-unrest-in-des-moines/.

13

79.    Defendant Youngblut discussed the plan to illegally seize those individuals'
phones with Defendant Blom.

80.    Defendant Blom stated to Defendant Youngblut that he did not "think it was
a great idea but the bosses thought of it, so they think it is."

81.    Defendant Youngblut responded that it was at least "a nice inconvenience"
for the individuals Defendant Police had illegally arrested.

82.    Defendant Police illegally arrested over forty individuals in the early morning
hours of May 31, 2020 and falsely charged them with protest-related crimes that they did
not commit.

83.    Defendant Police knew that there was not probable cause for the charges
against those individuals.

84.    Defendant Police supervisors instructed Defendant Police officers to charge
everyone with the same crimes, regardless of the person's actual conduct.

85.    Defendants Allen and Escobar Hernandez were two of the officers assigned
to processing all of the individuals who had been arrested.

86.    Defendants Allen and Escobar Hernandez were instructed to charge all of
the arrestees in their paddy wagon with the two charges associated with case number
14451.

87.    Defendants Allen and Escobar Hernandez pulled up that case number and
realized that the two charges they had been instructed to apply to everyone were Criminal
Mischief 2nd degree, a Class D felony, and Rioting, an aggravated misdemeanor.

88.    Defendants Allen and Escobar Hernandez recognized that there was no
basis to charge the arrestees in their paddy wagon with these charges. Defendant Allen

14

stated, "We're putting them all under criminal mischiefs? That doesn't make any sense. There's no possible way."

89.     Defendant Allen therefore went to his supervisor, Defendant Bagby, to see if there had been a mistake. Defendant Bagby confirmed that everyone was to be charged with Rioting and Criminal Mischief.

90.     Defendant Escobar Hernandez acknowledged that there was no way those charges would hold up, but the charges would serve to "keep them inside." Defendant Allen agreed the charges were "an absolute crap shot."

91.     Upon information and belief, Defendant Officers who participated in arresting and charging Plaintiffs knew that there was not probable cause for the charges, but went forward with the arrests and charges anyway because directed to do so by their supervisors.

92.     Upon information and belief, the following individuals were wrongfully arrested and charged with crimes they did not commit:

| | |
|---|---|
| Beebe, Augustin John | Kongroar, Akour Ajak Nyok Amieth |
| Castaneda, Stefan William | Lard, Cameron Malik |
| Debrossard, Verchon Cortrell | Marovets, Jack Zech |
| Driver, Megan Renee | McElroy, Andrew Jordan |
| Dunn, Cierra Raevon | Mcguire, Gabriel Teague |
| Fife, Sonny James | Mcintyre, Torrance Jamal |
| Foote, Denver Rose | Moler, Makenzie Lee |
| Gruwell, William Shane | Morgan, Pascha Angel |
| Hardat, Jahsiah Dmichael | Morris, John Kenneh |
| Hermann, Jonah Paul | Nicolai, Miranda Lachelle |
| Howard Fugate, Trentae Trinity Jr | Olsen, Tyler Robert |
| Jacobsen, Sophia Muriel | Patton, Jaquan Remelle |
| Johnson, Demariah Terrence | Petefish, Joshua William |
| Johnson, Jivonte D`Wayne | Price, Brittany Morgan |
| Jordan, Darrell | Robertson, Dylan James |
| King, Mila Grace | Robinson Mccuddin, Tyler Michael |
| Klingenberg, Michael Keith | Robinson, Sean Michael |
| Kohl, Jordan Amaru | Sahr, Jacob Anthony |

15

Schwab, Trent Alexander        Vande, Colin Henry
Sinram, Joshua Michael         Woods, Harrison Alan
Timberlake, Emma Joy           Young, Tony Alexander

93.    Upon information and belief, in addition to this list, there were also many individuals under the age of 18 who were wrongfully arrested and charged with crimes they did not commit.

94.    Many, if not all, of these individuals explained to Defendant Police that they had not done anything wrong and were not connected in any way with the vandalism on Court Avenue, but were arrested anyway despite police having no evidence suggesting those individuals committed any crime.

95.    Many of those individuals asked Defendant Police why they were being arrested and received no explanation.

96.    Upon information and belief, the false charges against those individuals have been dismissed by the Polk County District Court.

97.    Upon information and belief, fewer than thirty of the officers who responded to the downtown area had their body cameras on and recording.

98.    When the battery on one Defendant Police officer's body camera was getting ready to die, the officer's sergeant told him that it was "probably better that way."

99.    Even those officers who were wearing their body cameras and recorded portions of their involvement that night did not record other important actions, including arrests and use of force.

100.   By illegally arresting, assaulting, and seizing the property of citizens in the downtown area, Defendant Police intended to punish citizens for their protest activity—an exercise of their First Amendment rights—and to deter future demonstrations.

16

101.    Defendant Police have a pattern of using excessive force against individuals they believe are affiliated with protests and charging those individuals without probable cause. This pattern continued beyond the early hours of May 31, 2020.

102.    Defendant Police have intentionally and indiscriminately attacked neutral members of the press and legal observers on several occasions.[3] This conduct has intimidated journalists and neutrals and reduced the number of media and observers willing to attend protests and to stay to document and observe the protests.

103.    Des Moines Police officers pepper-sprayed and arrested a Des Moines Register reporter, Andrea Sahouri, who was covering the protests near Merle Hay Mall on May 31, 2020. Ms. Sahouri advised the officers that she was working as a reporter. The officers arrested her, regardless.[4]

104.    Des Moines Police officers pepper-sprayed, tackled, and falsely charged a photographer on June 2, 2020, Mark Nieters, who clearly identified himself as media and was not violating any laws or acting in a violent or threatening manner.[5]

105.    Approximately twelve Des Moines Police officers arrested three individuals at gunpoint outside the Blazing Saddle on June 2, 2020 who were not violating any laws

---

[3] See https://caffeinatedthoughts.com/2020/06/vander-hart-police-must-respect-freedom-of-the-press/;
https://www.desmoinesregister.com/story/opinion/columnists/from-the-editor/2020/06/02/journalists-arrested-pepper-spray-doing-jobs-press-freedom-george-floyd/3124778001/.

[4] See https://www.desmoinesregister.com/story/news/2020/05/31/register-reporter-arrested-while-covering-protest/5304560002/.

[5] See https://www.desmoinesregister.com/story/opinion/columnists/rekha-basu/2020/08/20/blm-protests-watchdogs-see-trend-police-targeting-press/5602509002/.

or acting in a violent or threatening manner. Those officers then proceeded to raid the Blazing Saddle.[6]

106.    Des Moines Police officers pepper-sprayed a Des Moines Register reporter, Katie Akin, who was complying with commands to disperse on June 1, 2020. Ms. Akin was not in the group with the protesters, but was observing the protests from yards away. Ms. Akin was holding up her press badge and shouting that she was with the press at the time she was pepper-sprayed.[7]

107.    It is clearly established that it is unconstitutional for law enforcement to use chemical spray when an individual has broken no law and is not threatening anyone. *See Davis v. City of Albia*, 434 F. Supp. 2d 692, 707 (S.D. Iowa 2006).

108.    It is clearly established that it is unconstitutional for law enforcement to tackle or beat an individual who is not fleeing or resisting arrest. *See Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013).

109.    It is clearly established that it is unconstitutional to arrest and charge an individual without probable cause. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010).

110.    It is clearly established that it is unconstitutional for law enforcement to retaliate against citizens for those citizens' exercise of their First Amendment rights. *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007).

---

[6] *See* https://www.desmoinesregister.com/story/news/crime-and-courts/2020/06/06/men-arrested-gunpoint-near-blazing-saddle-feel-force-excessive/3143782001/.

[7] *See* https://www.desmoinesregister.com/story/news/2020/06/02/des-moines-police-pepper-spray-journalist-iowa-george-floyd-protest-des-moines-register-reporter/3126478001/.

111.    It is clearly established that an officer is not excused for violating someone's constitutional rights simply because the officer is following orders. *J.H.H. v. O'Hara*, 878 F.2d 240, 245 n.4 (8th Cir. 1989).

## II.    Class Representatives

### A.    Cierra Dunn

112.    Sometime after midnight on May 31, 2020, Cierra Dunn met some friends at the Savery Hotel in Des Moines.

113.    Ms. Dunn drove to the Savery with her boyfriend, Trentae Fugate, and parked on Locust Street near the hotel.

114.    Ms. Dunn left the hotel sometime after 3:30 a.m. and walked to her car with Mr. Fugate.

115.    As Ms. Dunn and Mr. Fugate approached her car, a group of police officers, John Doe 1 through 20, ran towards them and prevented them from getting in the car.

116.    The officers knew that Ms. Dunn and Mr. Fugate had been in the hotel.

117.    Ms. Dunn and Mr. Fugate further explained to the officers that they had been at the hotel and were leaving to go home.

118.    Ms. Dunn and Mr. Fugate were not being violent or threatening.

119.    Ms. Dunn and Mr. Fugate were not assembled with any persons who were acting in a violent manner.

120.    Ms. Dunn and Mr. Fugate were not in the immediate vicinity of a riot or an unlawful assembly.

121.    Indeed, there were no other people anywhere near Ms. Dunn and Mr. Fugate.

122.    There was no reasonable suspicion or probable cause to seize or arrest Ms. Dunn or Mr. Fugate.

123.    One of Defendant Police told Ms. Dunn that she was being arrested for Failure to Disperse, even though she was getting in her car to go home at the time of her arrest.

124.    The officers placed Ms. Dunn and Mr. Fugate under arrest and zip-tied their wrists together.

125.    One of the officers verbally harassed Ms. Dunn, telling her that she could kiss her college career goodbye and that she was an idiot.

126.    Defendant Holtan and Defendant Moffatt were two of the officers who arrested Ms. Dunn and Mr. Fugate.

127.    Defendant Holtan is a member of Metro Star Team 1. Other members of Star Team 1 include Ryan Armstrong, Brad Hook, Nick Smith, Adam Herman, Todd Wilshushen, Dave Chiodo, Ken Callahan, Myles Schrage, Daniel Dempsey, and James Grimes, and it is likely these officers participated in Ms. Dunn and Mr. Fugate's arrests.

128.    Defendant Moffat is a member of Metro Star Team 4. Other members of Star Team 4 include Scott Newman, Jared Underwood, Jacob Lovell, Jake Forrester, Jacob Hedlund, Tyler Palmer, and Bryan Bach, and it is likely that these officers participated in Ms. Dunn and Mr. Fugate's arrests.

129.    The officers proceeded to search Ms. Dunn's vehicle. The officers searched Ms. Dunn's purse, which was inside the vehicle.

130.   Mr. Fugate has a Permit to Carry and was legally carrying his handgun on him. He informed Defendant Police of this and Defendant Police verified his permit was legitimate.

131.   Defendant Police nevertheless seized Mr. Fugate's firearm.

132.   Defendant Police found a second handgun in Ms. Dunn's vehicle, which also belonged to Mr. Fugate and was registered to him. Defendant Police seized that handgun, as well.

133.   There were at least ten officers who were nearby prior to Ms. Dunn's arrest.

134.   Upon information and belief, none of Defendant Police involved in Ms. Dunn's arrest had their body cameras on and recording, including Defendant Holtan and Defendant Moffatt.

135.   Defendant Police subsequently transported Ms. Dunn and Mr. Fugate to jail.

136.   Defendant Police booked Ms. Dunn into the Polk County Jail on charges of Criminal Mischief in the 2nd Degree, a Class D felony, and Rioting, an aggravated misdemeanor.

137.   There was no probable cause to charge Ms. Dunn with Criminal Mischief or Rioting.

138.   On May 31, 2020, Defendant Paulson filed a criminal complaint against Ms. Dunn charging her with Participation in a Riot, in violation of Iowa Code § 723.1.

139.   There was no probable cause to charge Ms. Dunn with Participation in a Riot.

140.   Ms. Dunn had to post a $7,000 bond to secure her release from custody.

21

141.    On June 5, 2020, Mr. Fugate filed a Claim for Return of Property with the Polk County District Court seeking the return of his firearms.

142.    Des Moines Police returned one of Mr. Fugate's firearms to him on or about June 20, 2020.

143.    At that time, Des Moines Police told Mr. Fugate that they did not have his second gun, which was not true.

144.    Des Moines Police returned Mr. Fugate's second gun to him on or about July 3, 2020.

145.    Despite Mr. Fugate's guns having been returned to him, on July 13, 2020, the State filed a Trial Information against Ms. Dunn charging her with Carrying a Concealed Weapon (the weapon that belonged to Mr. Fugate and he was licensed to carry), an aggravated misdemeanor in violation of Iowa Code § 724.4(1).

146.    In the Trial Information, the State did not charge Ms. Dunn with Participation in a Riot, thus effectively dismissing that charge.

147.    On September 10, 2020, Ms. Dunn filed a Motion to Suppress, alleging that law enforcement had violated her constitutional rights by illegally seizing her without reasonable suspicion or probable cause.

148.    On September 30, 2020, the Polk County District Court filed an Order granting Ms. Dunn's Motion to Suppress.

149.    The Polk County District Court concluded in that Order:

Viewing the totality of the circumstances through the eyes of the officers the court finds they did not have a reasonable, articulable suspicion that a criminal act had occurred, or was about to occur when they detained Ms. Dunn and Mr. Fugate. There was no evidence Mr. Fugate and Ms. Dunn had engaged in any criminal act. The officers were not responding to a particular call. They were patrolling the streets. Ms. Dunn and Mr. Fugate

22

were walking towards a car. They were in the general vicinity of a person who was walking towards another car but there was no evidence Mr. Fugate and Ms. Dunn were with this individual. There was no evidence they specifically disobeyed the Iowa State Patrol's order to disperse. In fact, Officer Moffatt testified walking to their car might have been an indication they were getting ready to leave the area.

150.    The Polk County District Court therefore ruled that "the search of Ms. Dunn's purse violated the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Iowa Constitution."

151.    On October 1, 2020, the State filed a Notice of Intent Not to Prosecute that requested the Polk County District Court dismiss the charge against Ms. Dunn. The Polk County District Court accordingly dismissed the charge the same day.

152.    Because of Defendants' actions, Ms. Dunn was afraid to attend protests.

## B.    Verchon Debrossard

153.    Verchon Debrossard was hanging out with his friend Cameron Lard on May 30, 2020.

154.    Mr. Debrossard met Mr. Lard at an apartment where Mr. Lard was staying, located at 3rd Street and Locust Street in downtown Des Moines.

155.    Mr. Debrossard and Mr. Lard then walked downtown and hung out together in the Court Avenue bar district.

156.    As individuals began to damage Hy-Vee, Mr. Debrossard was walking by himself on the North side of Court Avenue towards Fourth Street.

157.    When police arrived at Hy-Vee, Mr. Debrossard and Mr. Lard left the area.

158.    After a couple of minutes, Mr. Debrossard and Mr. Lard returned to the intersection of 3rd Street and Court Avenue and watched the officers in the area. At this time, there were around ten citizens in the area doing the same thing.

23

159.    After watching for a couple of minutes, Mr. Debrossard and Mr. Lard decided to return home and they began walking to the apartment where Mr. Lard was staying.

160.    As Mr. Debrossard and Mr. Lard crossed Cowles Commons on the way to the apartment, a group of Defendant Police shot tear gas or a flash bang into the middle of a group of approximately four people who were walking on the other side of the street.

161.    Mr. Debrossard and Mr. Lard continued to the apartment. When they were crossing the street to the apartment, a Bearcat vehicle carrying several police officers drove towards them.

162.    One of the officers yelled at them from across the street to go home and Mr. Debrossard responded that they were home.

163.    Mr. Debrossard and Mr. Lard finished crossing the street and walked to the gate of the apartment complex.

164.    As they approached the apartment complex, the police Bearcat pulled up next to the sidewalk and stopped.

165.    A group of around seven Defendant Police —Defendant Gruver, Valentine, and John Doe 21 through 28—ran towards Mr. Debrossard and Mr. Lard from the Bearcat.

166.    Without any explanation or asking any questions, Defendant Police aggressively and forcefully arrested Mr. Debrossard and Mr. Lard at the gate of the apartment complex.

167.    Mr. Debrossard and Mr. Lard told Defendant Police that they were at their apartment, but Defendant Police ignored this and violently arrested them, anyway.

24

168.    Defendant Police pepper-sprayed Mr. Lard multiple times in the face as he screamed and begged for help. Defendant Police threw Mr. Lard to the ground and zip-tied his hands together.

169.    Defendant Police forced Mr. Debrossard up against a brick wall and zip-tied his hands together.

170.    Upon information and belief, only two of the Defendant Police involved in Mr. Debrossard's arrest had their body cameras on and recording. Those officers were Defendant Gruver and Defendant Valentine.

171.    Defendants Gruver and Valentine further guarded Mr. Debrossard and Mr. Lard until they were loaded into a paddy wagon.

172.    Defendant Police sat Mr. Debrossard and Mr. Lard on the curb and Mr. Debrossard repeatedly explained to multiple officers that they were at their apartment.

173.    Mr. Debrossard told Defendant Police that they had keys that allowed them to enter the building, inviting the officers to verify this.

174.    Defendant Police made no efforts to confirm or dispel that Mr. Debrossard and Mr. Lard were staying at the apartment building they were about to enter.

175.    While Mr. Debrossard and Mr. Lard sat on the curb guarded by several Defendant Police, the man who owned the apartment where they were staying came outside and told Defendant Police that Mr. Lard was living with him for the week.

176.    Defendant Valentine told the apartment owner that Mr. Debrossard and Mr. Lard should not have been "downtown destroying stuff."

177.    This was a false accusation; neither Mr. Debrossard nor Mr. Lard destroyed any property. There was no factual basis for Defendant Valentine's statement.

25

178.   Even after receiving confirmation from the apartment owner that Mr. Debrossard and Mr. Lard were staying at the apartment building they had been attempting to enter, Defendant Police nevertheless refused to release Mr. Debrossard and Mr. Lard.

179.   Mr. Debrossard and Mr. Lard were not being violent or threatening.

180.   Mr. Debrossard and Mr. Lard were not assembled with any persons who were acting in a violent manner.

181.   Mr. Debrossard and Mr. Lard were not in the immediate vicinity of a riot or an unlawful assembly.

182.   Indeed, there were no other people anywhere near Mr. Debrossard and Mr. Lard when they were arrested.

183.   Even assuming that Mr. Debrossard and Mr. Lard had heard any order by police to disperse, they were arrested while they were dispersing.

184.   There was no reasonable suspicion or probable cause to seize or arrest Mr. Debrossard or Mr. Lard for the crime of failure to disperse.

185.   There was no reasonable suspicion to seize Mr. Debrossard or Mr. Lard for any other crime.

186.   Defendants Valentine and Gruber loaded Mr. Debrossard on a paddy wagon with directions that he be charged with Failure to Disperse.

187.   Defendant Youngblut seized Mr. Debrossard and Mr. Lard's phones without a warrant.

188.   Defendant Police subsequently transported Mr. Debrossard and Mr. Lard to jail.

189.   Defendant Police booked Mr. Debrossard into the Polk County Jail on charges of Criminal Mischief in the 2nd Degree, a Class D felony, and Rioting, an aggravated misdemeanor.

190.   Mr. Debrossard had to post an $8,000 bond to secure his release from custody.

191.   Mr. Debrossard was not released from custody until 7:22 a.m. on June 1, 2020.

192.   On May 31, 2020, Defendant Deb VanVelzen filed a criminal complaint against Mr. Debrossard charging him with Criminal Mischief 2nd Degree, in violation of Iowa Code § 716.4(1).

193.   On June 1, 2020, Defendant Jeremy Sprague filed a criminal complaint against Mr. Debrossard charging him with Unlawful Assembly, in violation of Iowa Code § 723.2; and Failure to Disperse, in violation of Iowa Code § 723.3.

194.   On June 1, 2020, Defendant Jeremy Sprague filed a criminal complaint against Mr. Debrossard charging him with Participation in a Riot, in violation of Iowa Code § 723.1.

195.   There was no probable cause to charge Mr. Debrossard with Criminal Mischief 2nd Degree; Participation in a Riot; Unlawful Assembly; or Failure to Disperse.

196.   On October 28, 2020, Mr. Debrossard filed a Motion to Suppress, alleging that law enforcement had violated his constitutional rights by illegally seizing him without reasonable suspicion or probable cause.

197.   On November 11, 2020, the State filed a Motion to Dismiss with Prejudice stating, "After reviewing the Defendants' motion and the officers body camera videos

27

associated with this matter, the State believes these cases should be dismissed in the interest of justice."

198.    The Polk County District Court subsequently dismissed all of the charges against Mr. Debrossard.

199.    Because of Defendants' actions, Mr. Debrossard was afraid to attend protests.

**C.    Michael Klingenberg**

200.    Mr. Klingenberg lives in downtown Des Moines.

201.    On May 31, 2020, Mr. Klingenberg walked from his apartment to the Court Avenue area to observe the protest activities.

202.    Mr. Klingenberg watched from afar, on top of the parking garage at Court Avenue and 3rd Street.

203.    Around 2:45 a.m., officers came to the top of the parking garage and told Mr. Klingenberg to leave.

204.    Mr. Klingenberg complied with that order and exited the parking garage.

205.    Upon exiting the parking garage to walk home, Mr. Klingenberg was arrested by two Defendant Police, John Doe 29 and 30.

206.    Mr. Klingenberg was violating no laws.

207.    Mr. Klingenberg was not being violent or threatening.

208.    Mr. Klingenberg was not assembled with any persons who were breaking the law.

209.    Mr. Klingenberg was not in the immediate vicinity of a riot or an unlawful assembly.

210.   There were no other people anywhere near Mr. Klingenberg when he was arrested.

211.   There was no probable cause to arrest Mr. Klingenberg for any crime.

212.   Mr. Klingenberg told Defendant Police that he lived downtown and was leaving but Defendant Police arrested Mr. Klingenberg, regardless.

213.   Upon information and belief, none of the Defendant Police involved in Mr. Klingenberg's arrest had their body cameras on and recording.

214.   Defendants Allen and Escobar Hernandez subsequently transported Mr. Klingenberg to jail.

215.   Defendants Allen and Escobar Hernandez booked Mr. Klingenberg into the Polk County Jail on charges of Criminal Mischief in the 2nd Degree, a Class D felony, and Rioting, an aggravated misdemeanor.

216.   Mr. Klingenberg had to post a $7,000 bond to secure his release from custody.

217.   On May 31, 2020, Defendant Nicolino filed criminal complaints charging Mr. Klingenberg with Participate in Riot, Unlawful Assembly, and Failure to Disperse.

218.   There was no probable cause to charge Mr. Klingenberg with Participation in a Riot; Unlawful Assembly; or Failure to Disperse.

219.   Mr. Klingenberg had to post a $7,000 bond to secure his release from custody.

220.   On July 7, 2020, the State filed a Trial Information charging Mr. Klingenberg with Participate in a Riot.

221.    On September 3, 2020, the State filed a Motion to Dismiss declining to prosecute Mr. Klingenberg.

222.    The Polk County District Court accordingly dismissed all of the charges against Mr. Klingenberg on September 4, 2020.

223.    Because of Defendants' actions, Mr. Klingenberg was afraid to attend protests.

**D.    Makenzie Moler**

224.    On May 31, 2020, Ms. Moler was hanging out with her friend Dylan Robertson in the Court Avenue bar area.

225.    Ms. Moler and Mr. Robertson parked in the garage at Court Avenue and 3rd Street.

226.    Ms. Moler and Mr. Robertson were by the entrance to the parking garage on 3rd Street when dozens of officers walked down 3rd Street.

227.    Around 2:47 a.m., Ms. Moler and Mr. Robertson asked an officer for permission to leave and were told that they could leave.

228.    Ms. Moler and Mr. Robertson then walked into the parking garage and got into their car.

229.    As soon as they got in their car, they were approached by approximately eight officers, four on each side, who forced them out of the car.

230.    The officers, John Doe 31 through 35, threw Ms. Moler against the trunk of the car and zip-tied her hands together.

231.    The officers, John Doe 36 through 39, threw Mr. Robertson to the ground and zip-tied his hands together.

30

232.    Ms. Moler told Defendant Police that she had been given permission to leave and was in the process of doing so, but Defendant Police arrested her regardless.

233.    Ms. Moler was violating no laws.

234.    Ms. Moler was not being violent or threatening.

235.    Ms. Moler was not assembled with any persons who were breaking the law.

236.    Ms. Moler was not in the immediate vicinity of a riot or an unlawful assembly.

237.    There was no probable cause to arrest Ms. Moler for any crime.

238.    Upon information and belief, none of the Defendant Police involved in Ms. Moler's arrest had their body cameras on and recording.

239.    Defendant Police zip-tied Ms. Moler so tightly that she was in a great deal of pain and began to lose circulation in her hands.

240.    Ms. Moler told Defendant Police who arrested her that the zip-ties were much too tight, but Defendant Police did not care.

241.    Defendants Allen and Escobar Hernandez subsequently transported Ms. Moler to jail.

242.    Defendants Allen and Escobar Hernandez booked Ms. Moler into the Polk County Jail on charges of Criminal Mischief in the 2nd Degree, a Class D felony, and Rioting, an aggravated misdemeanor.

243.    On May 31, 2020, Defendant Jeffrey George filed criminal complaints charging Ms. Moler with Participate in Riot, Unlawful Assembly, and Failure to Disperse.

244.    There was no probable cause to charge Ms. Moler with Participation in a Riot; Unlawful Assembly; or Failure to Disperse.

245.    Ms. Moler was not released from custody until June 1, 2020 at 12:12 p.m.

31

246.   Ms. Moler was released from custody on pretrial supervision, with an 8:00 p.m. curfew and a requirement to contact a pretrial supervision officer for an in-person visit once a month.

247.   On July 10, 2020, the State filed a Motion to Dismiss declining to prosecute Ms. Moler for Participate in Riot.

248.   The Polk County District Court accordingly dismissed the Participate in Riot charge against Ms. Moler that same day.

249.   On July 10, 2020, the State filed a Notice of Intent Not to Prosecute that requested the Polk County District Court dismiss the Unlawful Assembly and Failure to Disperse charges against Ms. Moler. The Polk County District Court accordingly dismissed those charges the same day.

250.   Because of Defendants' actions, Ms. Moler was afraid to attend protests. Ms. Moler was also unable to attend events that occurred after 8:00 p.m. because of her curfew.

### E.   Jaquan Patton

251.   Mr. Patton was hanging out with friends the evening of May 30, 2020. He was not in the Court Avenue or downtown area.

252.   Mr. Patton lived at an apartment at the corner of 3rd Street and Locust Street in downtown Des Moines.

253.   Around 3:20 a.m. on May 31, 2020, Mr. Patton rode with four other friends back to his apartment.

254.   The group parked on Locust Street near Mr. Patton's home.

255.    Mr. Patton and his friends exited the vehicle and were arrested almost immediately by a large group of Defendant Police, John Doe 40 through 60, as they began to walk to Mr. Patton's home.

256.    Defendant Police pushed Mr. Patton up against a building and zip-tied his hands behind his back.

257.    Mr. Patton and his friends were not being violent or threatening.

258.    Mr. Patton and his friends were not assembled with any persons who were acting in a violent manner.

259.    Mr. Patton and his friends were not in the immediate vicinity of a riot or an unlawful assembly.

260.    There was no reasonable suspicion or probable cause to seize Mr. Patton or his friends.

261.    Mr. Patton explained to Defendant Police that he lived across the street and he and his friends were on their way to his home, but Defendant Police arrested him, regardless.

262.    There were approximately fifteen to twenty Defendant Police nearby.

263.    Upon information and belief, none of the Defendant Police involved in Mr. Patton's arrest had their body cameras on and recording.

264.    Upon information and belief, Defendant Hedlund and Defendant Forrester participated in Mr. Patton's arrest. Defendants Hedlund and Forrester are members of Metro Star Team 4. Other members of Star Team 4 include Scott Newman, Jared Underwood, Jacob Lovell, Tyler Moffatt, Tyler Palmer, and Bryan Bach, and it is likely that these officers participated in Mr. Patton' and his friends' arrests.

33

265.    Defendant Youngblut seized Mr. Patton's phone and three of his friends' phones without a warrant.

266.    Defendant Police subsequently transported Mr. Patton and his friends to jail.

267.    Defendant Police booked Mr. Patton into the Polk County Jail on charges of Criminal Mischief in the 2nd Degree, a Class D felony, and Rioting, an aggravated misdemeanor.

268.    Mr. Patton had to post a $7,000 bond to secure his release from custody.

269.    Mr. Patton was not released from custody until 9:00 p.m. on May 31, 2020.

270.    On June 1, 2020 Defendant George filed criminal complaints against Mr. Patton charging him with Participation in a Riot, in violation of Iowa Code § 723.1; Unlawful Assembly, in violation of Iowa Code § 723.2; and Failure to Disperse, in violation of Iowa Code § 723.3.

271.    There was no probable cause to charge Mr. Patton with Participation in a Riot; Unlawful Assembly; or Failure to Disperse.

272.    On July 2, 2020, the State filed a Trial Information that omitted the Participation in a Riot charge, thus effectively dismissing that charge.

273.    On September 10, 2020, Mr. Patton filed a Motion to Suppress, alleging that law enforcement had violated his constitutional rights by illegally seizing him without reasonable suspicion or probable cause.

274.    On October 1, 2020, the State filed a Notice of Intent Not to Prosecute that requested the Polk County District Court dismiss the charge against Mr. Patton "because

the State anticipates the Court will suppress any and all evidence in this case leaving the State with insufficient evidence to proceed to trial."

275. The Polk County District Court subsequently dismissed all of the charges against Mr. Patton.

276. Because of Defendants' actions, Mr. Patton was afraid to attend protests.

## CLASS ALLEGATIONS

277. Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals who were in downtown Des Moines in the early morning hours of May 31, 2020 and were subjected to tear gas, pepper-spray, and violence; falsely arrested for crimes they did not commit; and had their property illegally seized.

278. Plaintiffs have the same interests and have suffered the same type of damages as the class members. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members of each class. Each class member suffered actual damages as a result of being subjected to one or more of the violations enumerated above. The actual injuries suffered by Plaintiffs are similar in type to the actual damages suffered by each class member although the severity of those injuries may vary among class members.

279. The Plaintiffs Class is so numerous that joinder of all the members would be impracticable. Upon information and belief, there are at least 42 adults who were charged with crimes they did not commit. Upon information and belief, there are many other individuals who were subjected to unlawful force who were not arrested. Upon information and belief, there are many other juveniles who were charged with crimes they did not commit.

280.    Plaintiffs will fairly and adequately protect the interests the interests of the Plaintiffs Class. Plaintiffs have no known conflicts involving other class members or Defendants. Plaintiffs understand their role as class representatives and their duties to the class in this litigation. Plaintiffs are represented by competent and skilled counsel whose interests are fully aligned with the interests of the class.

281.    Questions of law and fact are common to the class. These legal and factual questions include but are not limited to:

- By engaging in the tactics discussed herein, did Defendants violate the constitutional rights of Plaintiffs?

- Did the Defendants provide sufficient notice before using force/chemical irritants and making arrests purportedly for failure to disperse?

- Did Defendants use force/chemical irritants and make arrests for impermissible purposes?

- Have the State/Municipal Defendants insufficiently trained law enforcement officials regarding the use of force/chemical irritants and the requirements for legal arrests?

- Did the actions described herein constitute a policy or custom of State/Municipal Defendants?

- Do the State/Municipal Defendants have sufficient policies in place to ensure that the constitutional rights of the Plaintiffs Class are protected?

- Have the State/Municipal Defendants exhibited a deliberate indifference to the unconstitutional conduct alleged herein?

282.    Litigating individual actions creates a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

283.    This case involves issues with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.

## CAUSES OF ACTION

### COUNT 1
### ILLEGAL SEIZURE
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983
### VIOLATION OF 4th AMENDMENT TO THE UNITED STATES CONSTITUTION

284.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

285.    Defendants violated Plaintiffs' clearly established federal constitutional rights by seizing Plaintiffs without reasonable suspicion or probable cause to do so; by seizing Plaintiffs' property without a warrant or other legal cause to do so; and by charging Plaintiffs with crimes without probable cause.

286.    Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiffs' civil and constitutional rights.

287.    Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiffs' civil rights, justifying an award of punitive damages.

288.    As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

### COUNT 2
### ILLEGAL SEIZURE
### CIVIL RIGHTS VIOLATION OF ARTICLE I, § 8 OF THE IOWA CONSTITUTION

289.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

290.    Defendants violated Plaintiffs' clearly established constitutional rights by seizing Plaintiffs without reasonable suspicion or probable cause to do so; by seizing Plaintiffs' property without a warrant or other legal cause to do so; and by charging Plaintiffs with crimes without probable cause.

37

291.  Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiffs' civil and constitutional rights.

292.  Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiffs' civil rights, justifying an award of punitive damages.

293.  Plaintiffs hereby request reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of their constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

294.  As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 3
## EXCESSIVE FORCE
## CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983
## VIOLATION OF 4th AMENDMENT TO THE UNITED STATES CONSTITUTION

295.  Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

296.  The force used by Defendants was excessive and applied maliciously and sadistically for the purpose of causing harm and not in a good faith effort to achieve a legitimate purpose.

297.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

298.  Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiffs' civil and constitutional rights.

299.  Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiffs' civil rights, justifying an award of punitive damages.

300.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

**COUNT 4**
**EXCESSIVE FORCE**
**CIVIL RIGHTS VIOLATION OF ARTICLE I, § 8 OF THE IOWA CONSTITUTION**

301.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

302.   The force used by Defendants was excessive and applied maliciously and sadistically for the purpose of causing harm and not in a good faith effort to achieve a legitimate purpose.

303.   Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiffs' civil and constitutional rights.

304.   Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiffs' civil rights, justifying an award of punitive damages.

305.   Plaintiffs hereby request reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of their constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

306.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

**COUNT 5**
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983**
**VIOLATION OF 1st AMENDMENT TO THE UNITED STATES CONSTITUTION**

307.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

308.   Plaintiffs were exercising their First Amendment rights.

39

309.   Defendants violated Plaintiffs' clearly established federal constitutional rights by assaulting them, arresting them, and charging them with crimes in retaliation for their exercise of their First Amendment rights and acting in a manner that prevented the exercise of their First Amendment rights.

310.   Retaliation was a substantial or motivating factor for Defendants' decision to assault, arrest, and criminally charge Plaintiffs.

311.   Defendants would not have pepper-sprayed, assaulted, arrested, and criminally charged Plaintiffs but for their retaliatory motive.

312.   Similarly situated individuals who were not engaged in the same sort of protected activity as Plaintiffs were not assaulted, arrested, and criminally charged.

313.   Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiffs' civil and constitutional rights.

314.   Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiffs' civil rights, justifying an award of punitive damages.

315.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 6
## CIVIL RIGHTS VIOLATION OF ARTICLE I, § 7 OF THE IOWA CONSTITUTION

316.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

317.   Plaintiffs were exercising their article I, § 7 rights.

318.   Defendants violated Plaintiffs' clearly established federal constitutional rights by assaulting them, arresting them, and charging them with crimes in retaliation for

their exercise of their article I, § 7 rights and acting in a manner that prevented the exercise of their article I, § 7 rights.

319.   Retaliation was a substantial or motivating factor for Defendants' decision to assault, arrest, and criminally charge Plaintiffs.

320.   Defendants would not have assaulted, arrested, and criminally charged Plaintiffs with pepper spray but for their retaliatory motive.

321.   Similarly situated individuals who were not engaged in the same sort of protected activity as Plaintiffs were not assaulted, arrested, and criminally charged.

322.   Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiffs' civil and constitutional rights.

323.   Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiffs' civil rights, justifying an award of punitive damages.

324.   Plaintiffs hereby request reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of their constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

325.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

**COUNT 7**
**CONSPIRACY**
**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C §§ 1983 and 1985**
**VIOLATION OF 4th, 5th & 14th AMENDMENTS TO**
**THE UNITED STATES CONSTITUTION**

326.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

327.   Defendants reached an agreement among themselves to deprive Plaintiffs of their constitutional rights.

328.   In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

329.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

330.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 8
## CONSPIRACY
## CIVIL RIGHTS VIOLATION OF ARTICLE I, §§ 6 & 8 OF THE IOWA CONSTITUTION

331.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

332.   Defendants reached an agreement among themselves to deprive Plaintiffs of their constitutional rights.

333.   In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

334.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

335.   Plaintiffs hereby request reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of their constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

336.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 9
### DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING AND SUPERVISION
### CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983
### VIOLATION OF 1st, 4th, 5th & 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION

337.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

338.    Defendants Wingert and City of Des Moines, Iowa are persons for the purposes of a Section 1983 action for damages.

339.    Defendants Wingert and City of Des Moines, Iowa are responsible for establishing, maintaining, and enforcing the official policies, procedures, patterns, practices, and/or customs of the Des Moines Police Department for use of pepper spray and use of force, generally.

340.    Defendant City of Des Moines, Iowa is charged with the duty to ensure that its law enforcement officers are properly trained and supervised.

341.    As Chief of Police, Defendant Wingert is ultimately responsible for the training and supervision of his officers.

342.    Defendants violated Plaintiffs' federal constitutional rights by:

    a. declaring unlawful assemblies without adequate sound amplification audible enough to be heard and understood by the protesters, and without providing directions, means and opportunity to disperse before taking aggressive police action

    b. kettling lawful demonstrators in order to arrest them without affording them an opportunity to leave, and taking aggressive police action without declaring an unlawful assembly;

    c. permitting City of Des Moines police officers to violate the constitutional rights of citizens;

    d. ratifying and approving the unlawful use of force against citizens;

43

e. failing to enforce and implement policies preventing the unlawful use of force against citizens;

f. tolerating, encouraging, and permitting collusive statements by involved officers in such situations;

g. failing to adopt and enforce policies to document citizen interactions that do not result in arrest or citation;

h. failing to adopt a system to identify, track, and monitor problematic police behavior and patterns of unconstitutional conduct;

i. failing to take adequate disciplinary measures against City of Des Moines police officers who violate the civil rights of citizens;

j. failing to train and/or supervise properly officers in the constitutional requirements for use of force and the necessity of probable cause for arrest;

k. failing to implement adequate maintenance training and properly focused maintenance training.

343.    Defendants' policies, procedures, customs, and/or practices caused the violations of Plaintiffs' constitutional and federal rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

344.    The need for the aforementioned training and supervision was obvious and it was foreseeable that the inadequacy of Defendants' training and supervision was likely to result in the violation of constitutional rights.

345.    Defendants demonstrated a deliberate indifference to and/or reckless disregard of Plaintiffs' constitutional rights and those similarly situated to them.

346.    Defendants' failure to train and supervise Defendants caused the violations of Plaintiffs' constitutional and federal rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives

44

347.    As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

**COUNT 10**
**DELIBERATELY INDIFFERENT POLICIES, PRACTICES,**
**CUSTOMS, TRAINING AND SUPERVISION**
**CIVIL RIGHTS VIOLATION PURSUANT TO**
**ARTICLE I, §§ 6, 7 & 8 OF THE IOWA CONSTITUTION**

348.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

349.    Defendants Wingert and City of Des Moines, Iowa are responsible for establishing, maintaining, and enforcing the official policies, procedures, patterns, practices, and/or customs of the Des Moines Police Department for use of pepper spray and use of force, generally.

350.    Defendant City of Des Moines, Iowa is charged with the duty to ensure that its law enforcement officers are properly trained and supervised.

351.    As Chief of Police, Defendant Wingert is ultimately responsible for the training and supervision of his officers.

352.    Defendants violated Plaintiffs' state constitutional rights by:

a. declaring unlawful assemblies without adequate sound amplification audible enough to be heard and understood by the protesters, and without providing directions, means and opportunity to disperse before taking aggressive police action

b. kettling lawful demonstrators in order to arrest them without affording them an opportunity to leave, and taking aggressive police action without declaring an unlawful assembly;

c. permitting City of Des Moines police officers to violate the constitutional rights of citizens;

d. ratifying and approving the unlawful use of force against citizens;

e. failing to enforce and implement policies preventing the unlawful use of force against citizens;

f. tolerating, encouraging, and permitting collusive statements by involved officers in such situations;

g. failing to adopt and enforce policies to document citizen interactions that do not result in arrest or citation;

h. failing to adopt a system to identify, track, and monitor problematic police behavior and patterns of unconstitutional conduct;

i. failing to take adequate disciplinary measures against City of Des Moines police officers who violate the civil rights of citizens;

j. failing to train and/or supervise properly officers in the constitutional requirements for use of force and the necessity of probable cause for arrest;

k. failing to implement adequate maintenance training and properly focused maintenance training.

353. Defendants' policies, procedures, customs, and/or practices caused the violations of Plaintiffs' constitutional rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

354. The need for the aforementioned training and supervision was obvious and it was foreseeable that the inadequacy of Defendants' training and supervision was likely to result in the violation of constitutional rights.

355. Defendants demonstrated a deliberate indifference to and/or reckless disregard of Plaintiffs' constitutional rights and those similarly situated to them.

356. Defendants' failure to train and supervise Defendants caused the violations of Plaintiffs' constitutional rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

46

357.  Plaintiffs hereby request reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of their constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

358.  As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 11
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

359.  Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

360.  Defendants pepper-sprayed, beat, tackled, tightly zip-tied, and falsely arrested Plaintiffs.

361.  There was no legitimate justification for Defendants' actions.

362.  The conduct of Defendants was outrageous.

363.  Defendants intentionally caused or recklessly disregarded the probability of causing emotional distress to Plaintiffs.

364.  Plaintiffs suffered severe or extreme emotional distress as a result of Defendants' actions.

365.  As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 12
## MALICIOUS PROSECUTION

366.  Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

367.  Defendants instigated criminal prosecutions against Plaintiffs.

368.  The criminal prosecutions against Plaintiffs were dismissed.

47

369.    There was no probable cause for the charges against Plaintiffs.

370.    Defendants acted with malice in initiating the prosecutions against Plaintiffs.

371.    As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 13
## FALSE ARREST / IMPRISONMENT

372.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

373.    Defendants detained Plaintiffs against their will.

374.    The detention of Plaintiffs was unlawful.

375.    As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 14
## LIBEL

376.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

377.    Defendants published statements falsely claiming that Plaintiffs committed crimes.

378.    Plaintiffs did not commit those crimes and there was no probable cause for the charges against Plaintiffs.

379.    Defendants' statements were libelous per se.

380.    Defendants' false statements injured Plaintiffs.

381.    As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

48

## COUNT 15
## ASSAULT AND BATTERY

382.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

383.   Defendants subjected Plaintiffs to contact of an insulting and provoking nature.

384.   The actions of Defendants were undertaken without the consent of Plaintiffs.

385.   The intentional acts of Defendants resulted in bodily contact with Plaintiffs that a reasonable person would deem insulting or offensive.

386.   As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 16
## NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS

387.   Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

388.   Defendants had a duty to exercise reasonable care in the performance of their duties.

389.   Defendants breached their duty to exercise reasonable care.

390.   Defendants intentionally acted in an unreasonable manner, in disregard of a known or obvious risk, in circumstances where it was highly probable Plaintiffs would suffer harm.

391.   Defendants' breach caused harm to Plaintiffs.

392.   The harm Defendants caused to Plaintiffs was within their scope of liability.

393.    As a result of Defendants' acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages.

## COUNT 17
## RESPONDEAT SUPERIOR

394.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

395.    Defendant City of Des Moines employed Defendant Police.

396.    As alleged above, Defendant Police committed tortious acts against Plaintiffs.

397.    Defendant Police's actions were taken within the scope of their employment for City of Des Moines.

## PRAYER FOR RELIEF

Plaintiffs pray for Judgment against the aforementioned Defendants as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendant in an amount yet to be determined;

b. Compensation for violation of their constitutional rights, mental anguish, and humiliation;

c. Plaintiffs' cost in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

d. Declaratory relief;

e. Injunctive relief;

f. An award of pre-judgment interest;

g. Punitive damages; and

h. Any other relief the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury in this matter on all counts to which Plaintiffs is entitled to a jury.

**PARRISH KRUIDENIER DUNN GENTRY
BROWN BERGMANN & MESSAMER, L.L.P.**

By: _/s/ Gina Messamer_

Gina Messamer           AT0011823
2910 Grand Avenue
Des Moines, Iowa 50312
Telephone: (515) 284-5737
Facsimile: (515) 284-1704
Email: gmessamer@parrishlaw.com
**ATTORNEY FOR PLAINTIFFS**

**Original Filed.**