UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **CIERRA DUNN et. al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**JOHN DOE 1 – 20 et. al.,**<br><br>Defendants. | **CASE NO. 4:21-cv-53**<br><br>**PLAINTIFFS' RESISTANCE TO POLK COUNTY DEFENDANTS' MOTION TO RESIST** |

**COME NOW** the Plaintiffs and for their resistance to the Polk County Defendants' motion to dismiss, states as follows:

**I.   INTRODUCTION**

The facts in the complaint all arise from the arrest of Plaintiffs in the Court Avenue area of downtown Des Moines, Iowa on May 30 and May 31, 2020. The claims against the Defendants are based on suspicion-less, indiscriminate and violent arrests against the Plaintiffs, who were not rioting, not looting, not failing to disperse, and in general, not even among those that were protesting against the police. Each Plaintiff was snatched out of the downtown area and charged with crimes that they did not commit, and which were dismissed over the following months once cooler heads reviewed the evidence. The complaint is a lengthy 74 pages, and 496 paragraphs, as a result of Defendants' widespread illegal conduct.

As relevant to the pending motion to dismiss, the amended complaint, DCD No. 30, states the following claims against the Polk County individual officers:

- Counts 1: Federal Illegal Seizure
- Count 2 State Illegal Seizure

1

- Count 3 Federal Excessive Force

- Count 4 State Excessive Force

- Count 7: Malicious Prosecution

- Count 8: False Arrest/Imprisonment

- Count 10: Assault and Battery

- Count 11: Negligence/Gross Negligence/Recklessness

For each of Counts 1, 2, 3, 4, 6, 8, 10, and 11, the petition specifies the particular defendants each plaintiff is suing as follows:

> Cierra Dunn v. Hook, Smith, Callahan, Lovell, Bach
>
> Trentae Fugate v. Hook, Smith, Callahan, Lovell, Bach
>
> Jaquan Patton v. Hook, Smith, Callahan, Lovell, Bach
>
> Jayvione Lewis v. Hook, Smith, Callahan, Lovell, Bach
>
> Jivonte Johnson v. Hook, Smith, Callahan, Lovell, Bach
>
> Emma Timberlake v. Hook, Smith, Callahan, Lovell, Bach
>
> Sophia Jacobsen v. Hook, Smith, Callahan, Lovell, Bach
>
> Tony Young v. Hook, Smith, Callahan, Lovell, Bach

The petition also includes three claims pled by all Plaintiffs against Polk County:

- Count 5: Federal Deliberate Indifference

- Count 6: State Deliberate Indifference

- Count 12: Respondeat Superior

## II.  STANDARD OF REVIEW ON MOTION TO DISMISS

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).

A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged […] [T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368 (8th Cir. 2017). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombley*, 55 U.S. 544, 556 (2007)).

Although the *Iqbal* and *Twombly* cases impose stringent pleading requirements, "the rules of procedure continue to allow notice pleading through a short and plain statement of the claim showing that the pleading is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Johnson v. Precythe*, 954 F.3d 1098, 1101 (8th Cir. 2020) (cleaned up). "Whether [Plaintiffs] can *prove* the claim through admissible evidence . . . is a different matter to be addressed at a later stage of the proceedings." *Id.*

### III. FACTUAL ALLEGATIONS FROM THE COMPLAINT

#### A. Overarching allegations

In the aftermath of George Floyd's murder, hundreds of thousands of people assembled together throughout the United States to protest police brutality and systemic racism. (*Id.* at ¶ 64). One such protest – the one at the heart of this case – took place the

3

evening of May 30, 2020, and extending into the early morning hours of May 31, 2020, in downtown Des Moines. (*Id.* at ¶ 65). This protest generated a large police response, in part due to the actions of some bad actors who damaged the Polk County Courthouse, the Court Avenue Hy-Vee, and other buildings downtown. (*Id.* at ¶¶ 68-128).

Upon arriving at the scene, law enforcement failed to discriminate between law-breakers and peaceful protesters. Many people who had nothing to do with the protests were out enjoying themselves in the Court Avenue area. (*Id.* at ¶ 84). After a few individuals broke into the Hy-Vee, law enforcement canvassed the area and began arresting individuals regardless of whether they had anything to do with the vandalism downtown. (*Id.* at ¶¶ 88-95). Despite the fact that there was no dispersal order, Police arrested people who were not violating any laws or acting in a violent or threatening manner. (*Id.* at ¶¶ 95-96). Police used pepper-spray and force indiscriminately on the crowds, even against people who were cowering from the police and not engaged in illegal activity. (*Id.* at ¶¶ 97-100). All told, 42 adults and an unknown number of juveniles were wrongfully arrested and charged with crimes they did not commit during this mass enforcement action. (*Id.* at ¶¶ 125-26).

The Polk County Defendant police officers – Brad Hook, Nick Smith, Ken Callahan, Jacob Lovell, and Bryon Bach – were involved in these unlawful arrests and uses of force. Specifically, Metro Star Teams 1 and 4 were among those deployed against the protesters on May 30 and May 31, 2021. (*Id.* at ¶¶ 166-67, 396-97). Plaintiffs have had an extraordinarily difficult time, with multiple police departments joining forces and committing mass arrests, determining who did what. Untangling this mess has been complicated by the Defendants' own actions: officers were told that they did not have to

complete a use of force report if they did not arrest someone. (*Id.* at ¶ 101). Many officers who responded to the protests had their body cameras on and recording. (*Id.* at ¶ 135). This was by design: when one defendant police officer's body camera was nearly out of battery, his sergeant told him that "it was probably better that way." (*Id.* at ¶ 137). Members of the media were forced to leave the downtown area, limiting video evidence of the arrest. (*Id.* at ¶ 108). Arresting officers also failed to fill out paperwork for booking arrestees into jail and charging them. (*Id.* at ¶¶ 116-24).

In addition to sending Metro Star officers to the area, Polk County involved itself in this matter through the Polk County Attorney's Office, by directing DMPD officers to charge *all* individuals arrested from the Court Ave areas with Rioting, Failure to Disperse, and Unlawful Assembly. (*Id.* at 129). At 12:51 p.m. on May 31, 2020, Jeff Noble (the Bureau Chief, Intake Division of the Polk County Attorney's Office) sent an email to Defendant Nicolino instructing law enforcement to charge those arrested the night before with the charges of Rioting, Failure to Disperse, and Unlawful Assembly. (*Id.* at ¶ 23). Noble helpfully wrote the text that each officer should use in the sworn affidavit attached to the complaint:

> Defendant was a member of a group (of WELL over three people) that assembled to protest allegations of racism and police brutality. Initially, the protest was peaceful. The protests evolved to rioting in the late evening hours of May 30, 2020 into the early morning hours of May 31, 2020 with many of the remaining participants engaging in violent, intimidating and destructive behavior.
>
> Police officers clearly, loudly and repeatedly instructed all participants to disperse.
>
> Despite those instructions, Defendant willfully stayed among the group that remained. This group was engaging in assaultive conduct, the intimidation of people and destruction of property. The participants barricaded public streets. Private businesses and public buildings were damaged with spraypaint. Windows were shattered. Fires were started and rocks were

> thrown at people including police officers. Citizens working in the area were afraid for their safety.
>
> This destruction was open, extensive and obvious, yet the defendant willfully remained among the group of persons responsible for this conduct all of which occurred in the City of Des Moines, Polk County, Iowa.

(*Id.* at ¶ 131).

As a result of Noble's directions, Defendant Polk County maintained and enforced a policy of arresting anyone present at the scene of a protest without evidence that they conducted themselves in a violent manner. (*Id.* at ¶ 132). This policy was contrary to well-established Iowa law that a person "does not Join in a riot or Remain a part of a riot, unless he conducts himself in a violent manner." *Williams v. Osmundson*, 281 N.W.2d 622, 624 (Iowa 1979).

### B.      Cierra Dunn and Trentae Fugate

Cierra Dunn and Trentae Fugate were arrested after leaving the Savery Hotel in Des Moines sometime after 3:30 a.m. (*Id.* at ¶¶ 150-152). They were not involved in the protests at all. (*Id.*). But, as they approached Dunn's car, a group of police officers ran towards them and prevented them from getting in the car. (*Id.* at ¶ 153). The officers knew they had been in the hotel, and not part of the protests. (*Id.* at ¶¶ 154-155). Officers had no reason to believe that Dunn and Fugate were part of the protests: they were not being violent or threatening, they were not assembled with people who were being violent, and they were not in the immediate vicinity of a riot or an unlawful assembly.(*Id.* at ¶¶156-58). Indeed, they were not near anyone else at all. (*Id.* at ¶ 159). Simply put, there was no reason to arrest Dunn and Fugate. (*Id.* at ¶ 160).

Despite this, Dunn and Fugate were arrested, and with excessive force. Dunn and Fugate's wrists were zip tied. (*Id.* at ¶ 162). Then, Dunn and Fugate were booked into the

Polk County Jail on crimes that they did not commit: Criminal Mischief in the 2nd Degree, a class D felony, and Rioting, an aggravated misdemeanor. Fugate was also booked into the Polk County Jail on Unlawful Assembly, a simple misdemeanor. (*Id.* at ¶ 175). Additional criminal filings would follow, accusing Dunn and Fugate of Participating in a Riot, Failure to Disperse, and Unlawful Assembly. (*Id.* at ¶¶ 177-181). There was no probable cause for any of these charges. (*Id.*). The charging documents contained verbatim the charging language Assistant County Attorney Noble instructed law enforcement to utilize in charging protesters. (*Id.* at ¶ 180). All charges were eventually dismissed after the Polk County District Court found the seizure of Dunn was unconstitutional. (*Id.* at ¶ 188–197).

Dunn and Fugate cannot identify every single person who was involved in arresting them, because it was "a group of police officers." (*Id.* at ¶ 153). Not every officer involved signed the paperwork or was listed as a witness in the court filings against Dunn and Fugate. However, some of the officers were identified, including Defendants Holtan, Moffatt, and Palmer. (*Id.* at ¶¶ 164-65). Dunn and Fugate have also been able to identify that the members of Metro Star Team 1 and 4 were involved in arresting them. This includes Hook, Smith, Callahan, Lovell, and Bach. (*Id.* at ¶¶ 166-67). For this reason, the members of Metro Start Teams 1 and 4 (including the Polk County Defendants), along with those police officers that Dunn and Fugate *could* identify (Holtan, Moffatt, and Palmer) are identified as defendants in Dunn and Fugate's claims for Illegal Seizure, Excessive Force, Malicious Prosecution, False Imprisonment, Assault and Battery, and Negligence/Gross Negligence/Recklessness. Because the policy of charging every protester with an affidavit containing identical false language came from a Polk County

7

employee (Noble) and because Polk County is responsible for the actions of its Sheriffs' deputies, Dunn and Fugate have alleged *Monell* liability and respondeat superior liability against Polk County. (*Id.* at ¶¶ 12-133, 180).

### C. Jaquan Patton, Jayvione Lewis, Jivonte Johnson, Emma Timberlake, Sophia Jacobsen, and Tony Young

Jaquan Patton, Sophia Jacobsen, Jayvione Lewis, Jivonte Johnson, Tony Young, and Emma Timberlake were hanging out on the evening of May 30, 2020, away from the Court Ave/downtown area. (*Id.* at ¶ 370). Around 3:20 a.m., Patton, Jacobsen, Lewis, Johnson, Young, and Timberlake drove back to Patton's apartment at the corner of 3rd Street and Locust Street, parking on Locust Street. (*Id.* at ¶¶ 371-73). Immediately after exiting the vehicle, the group was surrounded by a group of police officers, with a total of 15 to 20 police officers in the vicinity. (*Id.* at ¶¶ 374, 381). Although the group of plaintiffs was not being violent or threatening, were not assembled with any persons who were acting in a violent manner, and were not in the immediate vicinity of a riot or an unlawful assembly, they were arrested by a group of defendant police officers. (*Id.* at ¶¶ 374, 376-378). There was no reasonable suspicion for arresting any member of this group. (*Id.* at ¶ 379). Patton explained to the arresting officers that he and his friends were simply on their way to his home. These explanations were ignored. (*Id.* at ¶ 380). Excessive force was used to zip tie and detain this group of plaintiffs. (*Id.* at ¶¶ 375).

Despite the lack of any basis to believe they were part of a protest, let alone a riot, Patton, Johnson, Timberlake, Jacobsen, Lewis, and Young were all booked into the Polk County Jail. (*Id.* at ¶ 390–392). Later, these plaintiffs were charged with participating in a riot, failing to disperse, criminal mischief, and unlawful assembly, all using the same affidavit dictated by Polk County employee Noble. (*Id.* at ¶¶ 394-403). There was no

8

probable cause to charge any of these plaintiffs with any of these crimes. (*Id.*at ¶ 404). All criminal allegations against these plaintiffs were subsequently dismissed. (*Id.* at ¶¶ 405-418).

Patton, Lewis, Johnson, Timberlake, Jacobsen and Young cannot identify every single person who was involved in arresting them, because it was "a large group of police officers." (*Id.* at ¶ 374). Not every officer involved signed the paperwork, or was listed as a witness in the court filings against these plaintiffs. However, some of the officers were identified, including Defendants Hedlund, Underwood, Palmer, Holtan, Chiodo, Armstrong, Schrage, and Forrester. (*Id.* at ¶ 383). These defendants are members of Metro Star Teams 1 and 4, which also include County Defendants Hook, Smith, Callahan, Lovell, and Bach. (*Id.* at ¶¶ 386-87). For this reason, the members of Metro Start Teams 1 and 4 (including the County Defendants), along with those police officers that this group of plaintiffs could identify (Hedlund, Underwood, Palmer, Holtan, Chiodo, Armstrong, Schrage, and Forrester) are identified as defendants in this group of plaintiffs' claims for Illegal Seizure, Excessive Force, Malicious Prosecution, False Imprisonment, Assault and Battery, and Negligence/Gross Negligence/Recklessness. Because the policy of charging every protester with an affidavit containing identical false language came from a Polk County employee (Noble) and because Polk County is responsible for the actions of its Sheriffs' deputies, Patton, Lewis, Johnson, Timberlake, Jacobsen, and Young have alleged *Monell* liability and respondeat superior liability against Polk County. (*Id.* at ¶¶ 12-133, 180).

## IV. ARGUMENT

Taking the allegations in the complaint as true and taking all reasonable inferences in favor of plaintiffs, the Plaintiffs have all plausibly pled claims for Illegal Seizure,

9

Excessive Force, Malicious Prosecution, False Imprisonment, Assault and Battery, and Negligence/Gross Negligence/Recklessness, *Monell* liability, and respondeat superior liability against the County Defendants. The claims should be permitted to proceed to discovery.

**A. Defendants' complaints of "shotgun" pleading are unfounded, and an attempt to avoid reading the complaint in the light most favorable to the plaintiff.**

Polk County Defendants complain that they do not understand what they are accused of doing due to a supposed impermissible "shotgun" pleading style. However, Defendants' insistence that they cannot understand which allegations in the complaint pertain to them are disingenuous for two reasons. First, the complaint is as specific as it can be given the chaotic situation that the *Defendants created*, by not completing their own arrest reports and use of force reports, and by not wearing body cameras and recording their actions while arresting protesters without probable cause. If the named Polk County Defendants were not involved in arresting Dunn, Fugate, Patton, Lewis, Johnson, Timberlake, Jacobsen, and Young, they can say so. If the discovery bears out their assertions, they will likely be dismissed, or be granted summary judgment. But the complaint plausibly asserts that the Polk County Defendants were present and involved in the illegal actions at the heart of these plaintiffs' complaints.

Second, Polk County Defendants' purported inability to understand the complaint arises from a failure to simply read the complaint in a natural way. Given the chaotic nature of the arrets on Court Ave on May 30 and 31, 2020, it is unreasonable for defendants to expect that they can merely "control f" their name, and ignore every other paragraph in the complaint. (*See, e.g.* DCD 88-1 at 3-4, listing only the paragraphs that contain a direct reference to the County Defendants). Defendants cannot avoid answering

10

the complaint by burying their head in the sand. *See, e.g. Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) ("The ostrich is a noble animal, but not a proper model for an . . . advocate.").

Complaints about supposed shotgun pleading are typical of defendants in complex civil litigation. However, "Courts within the Eighth Circuit have generally rejected arguments against incorporation-by-reference pleading where the pleading style does not make understanding the claims more burdensome." *Campbell v. Lake Regional Medical Mgmt., Inc.*, Case No. 2:19-cv-04124-NKL, 2019 WL 4228894, at *3 (W.D. Mo. Sept. 5, 2019) (collecting cases); *see also Hirschbach Motor Lines, Inc. v. SmartTruck Undertray Sys., Inc.*, No. C17-1019-LTS, 2018 WL 283261 at *10 n.9 (N.D. Iowa Jan. 3, 2018) ("Although plaintiffs do in fact incorporate prior allegations by reference throughout their complaint, perhaps meeting the technical definition for a shotgun pleading, in this case the effect is no so confusing that the complaint 'shifts onto the defendant the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support.'"). There are *no* Eighth Circuit cases prohibiting incorporation by reference.

Here, the complaint is understandable. It alleges that the Plaintiffs were not participating in a protest, let alone a riot, when large groups of police officers including the Polk County Defendants descended upon them and arrested them without probable cause or reasonable suspicion of wrongdoing. In arresting these Plaintiffs, the Defendants, including the Polk County Defendants, used excessive force. Then the Defendants, pursuant to County Policy, charged the Plaintiffs with crimes they did not commit, for improper purposes. This complaint should not be dismissed on an 11th Circuit theory regarding proper pleading styles.

B.   **Plaintiffs have plausibly stated a claim for unlawful arrest in violation of the Fourth Amendment and Article I, § 8.**

Under the Fourth Amendment and Article I, § 8, Plaintiffs have a clearly established right not to be arrested and charged without probable cause. *Baribeau v. City of Minneapolis*, 596 F3d 465, 478 (8th Cir. 2010). Plaintiffs plausibly plead that they were arrested for rioting, criminal mischief, failure to disperse, and unlawful assembly without probable cause. Iowa law defines a riot as "three or more persons assembled together in a violent manner, to the disturbance of others, and with any use of unlawful force or violence by them or any of them against another person, or causing property damage." Iowa Code § 723.1 (2020). It is a crime to "willing join[] in or remain[] a part of a riot, knowing or having reasonable grounds to believe that it is such." *Id.* The riot statute does *not* reach mere presence at a riot. *Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979). An unlawful assembly is also a group of "three or more persons assembled together." Iowa Code § 723.2 (2020). At least one of them must be "acting in a violent manner, and with intent [to] commit a public offense." *Id.* Like the riot statute, a person is commits the crime of unlawful assembly by "willingly join[ing] or remain[ing] a part of an unlawful assembly, knowing or having reasonable grounds to believe it is such." *Id.*

Accepting the facts pled in the complaint as true, Dunn, Fugate, Patton, Lewis, Johnson, Timberlake, Jacobsen and Young were not participating in a riot or unlawful assembly, nor did the law enforcement officers have any reasonable basis for believing that they were participating in a riot. Dunn and Fugate were not in a group of "three or more persons assembled," and were certainly not "together in a violent manner, to the disturbance of others." Law enforcement never saw them use force or violence against others or property. And while Patton, Lewis, Johnson, Timberlake, Jacobsen, and Young

12

were a group of more than three people, they were arrested while they were walking from their car to Patton's home. Again, law enforcement had no evidence that they were "together in a violent manner," disturbing others, or using force or violence against others or property. Law enforcement indiscriminately arrested these plaintiffs merely because they were downtown.

The same facts demonstrate a lack of probable cause on the other alleged crimes. Criminal mischief means "[a]ny damage, defacing, alteration, or destruction of property . . . done intentionally by one who has no right to so act." Iowa Code § 716.1. Law enforcement never saw any of these plaintiffs destroy property, and had no reason to believe that they were involved in the destruction of property. "Failure to disperse" requires that the suspect be either a participant in a riot or unlawful assembly, or in the immediate vicinity thereto. Iowa Code § 723.3. It also requires an actual order to disperse and refusal to obey that order. *Id.* As alleged in the complaint, Dunn, Fugate, Patton, Lewis, Johnson, Timberlake, Jacobsen and Young were not in the immediate vicinity of a riot or unlawful assembly, and in any event, there was no order to disperse. Counts 1 and 2 should not be dismissed.

Although the complaint does not allege specific actions by the Polk County Defendant officers, Hook, Smith, Callahan, Lovell, and Bach, more specific allegations are not required at this time. The cases cited by defendants for the contrary proposition (DCD 88-1 at 10) deal with motions for summary judgment, not motions to dismiss. *See, e.g. Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 736-37 (11th Cir. 2010) (granting summary judgment against two officers who were not actually involved in or supervising the arrest of plaintiff); *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 410 (S.D.N.Y.

2018) (same); *Howard v. Schoberle*, 907 F. Supp. 671, 682 (S.D.N.Y. 1995) (same). Plaintiffs are well-aware that they need to identify Hook, Smith, Callahan, Lovell, and Bach's specific conduct in order to survive a summary judgment motion. But at the present moment, before discovery, plaintiffs are not aware *who* arrested them. And it bears repeating that this lack of knowledge was caused by the Defendants' widespread policy of not documenting their actions on May 30 and 31, 2020. At the motion to dismiss stage, an allegation that these defendants were involved in the unlawful arrest of plaintiffs is sufficient. The facts, as pled, support a "reasonable inference" that Polk County Defendants are personally responsible for the illegal seizures of Plaintiffs.

### C. Plaintiffs have plausibly stated a claim for excessive force.

"Excessive force claims under the Constitution are governed by the Fourth Amendment's right of the people to be secure against unreasonable seizures." *Liggins v. Cohen*, 971 F.3d 798, 800 (8th Cir. 2020) (citation omitted). "Assessing the reasonableness of a seizure 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Shelton v. Stevens*, 964 F.3d 747, 751-52 (8th Cir. 2020) (citation omitted).

Taking the facts pled in the complaint as true, there was no justification for *any* amount of force against Dunn, Fugate, Patton, Lewis, Johnson, Timberlake, Jacobsen, or Young. They were not committing a crime. There was no reason whatsoever to believe they were committing crimes. Yet they were grabbed, zip tied, and detained. Even slight force can violate the constitution when it is unjustified. *See, e.g. Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 914-15 (E.D. Mo. 2020) ("The parties dedicate significant time to discussing whether some minimum level of injury is required . . . This argument is

unavailing. It is clearly established that the unreasonableness of the force used, not the nature of the injury, is the relevant inquiry."). And again, while plaintiffs are unable to state with specificity *which* of the officers used excessive force against them, it is not necessary to do so at this stage of the pleadings, particularly where it is Defendants' conduct that prevents plaintiffs from knowing who used force against them. The excessive force claims should not be dismissed at this stage of the litigation.

### D. Plaintiffs have plausibly stated a claim for *Monell* liability.

Under 42 U.S.C. § 1983, a local government may be liable as a "person" acting "under color of any law" for official policies or customs that subject citizens to constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). The issue is whether the "official policy [or custom] is responsible for a deprivation of rights." *Id.*

To prove the existence of a policy, the plaintiffs must "point to an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marsh v. Phelps Cnty.*, 902 F>3d 745, 752 (8th Cir. 2018) (citations omitted). The policy must be the "moving force" behind the constitutional violation. *Id.* To prove the existence of a municipal custom, plaintiffs must allege

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to, or tacit authorization of, such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, that is, proof that the custom was the moving force behind the constitutional violation.

*Ward v. City of Des Moines*, 184 F. Supp. 2d 892, 897 (S.D. Iowa 2002).

All of the plaintiffs have alleged that the e-mail sent on May 31, 2020, by Polk County Attorney's Office Bureau Chief Noble to the Des Moines Police Department was an official municipal policy or written directive that resulted in their arrest, detention, and the filing of false charges against them. (DCD 30 at ¶¶ 129-133). This email instructed law enforcement officers to charge any arrested protester with three crimes, using generic and inapplicable language in place of a sworn affidavit that would specifically describe any particular suspect's activities. (*Id.* at ¶ 131). Law enforcement actually followed through on this directive, filing complaints in each of Plaintiffs' cases using the generic language that came from Polk County. (*Id.* at ¶¶ 180, 244, 272, 299, 321, 343, 395, 399, 401). It is a reasonable inference that the filing of these copy-and-pasted complaints resulted in a deprivation of Plaintiffs' liberty.

Because Noble's decision was put into action without edits or the need for additional approval, Noble had final authority regarding this policy and was a policymaker. Nothing in this email states it a new policy or a change in policy. It is a reasonable inference that the Noble email—even though it was sent 12 hours after Plaintiff's arrest—accurately reflects the County's policy at the time of Plaintiffs' arrests. It is also a reasonable inference that the Noble email was a ratification of officers' arrests without probable cause. *See City of St. Louis v. Praprotnik*, 108 S. Ct. 915, 926 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

At the motion to dismiss stage, this is a plausible allegation that Polk County maintained a policy or custom that caused the violation of Plaintiffs' constitutional rights. Counts 5 and 6 should not be dismissed.[1]

### E. Plaintiffs have plausibly stated claims for assault and battery.

In the portion of their brief related to Plaintiffs' assault and battery claims, Polk County Defendants refer back to their arguments regarding excessive force. (DCD 88-1 at 14). For the same reasons discussed above with the excessive force claim, Dunn, Fugate, Patton, Lewis, Johnson, Timberlake, Jacobsen, and Young have plausibly stated claims for assault and battery. "[A]n excessive force claim is the functional equivalent of a claim for assault and battery under state law." *Daniels v. Tyler*, 56 F. Supp. 3d 967, 974 (N.D. Iowa 2014). Because Plaintiffs have pled facts to demonstrate the Polk County Defendants' involvement in an unjustified use of force, Count 10 should be permitted to proceed.

### F. Plaintiffs have plausibly stated claims for negligence, gross negligence, and recklessness.

"To maintain a claim for negligence, [Plaintiffs] must prove that [Defendants] owed a duty to protect [them] from the harm [they] suffered." *Lukken v. Fleischer*, 962 N.W.2d 71, 76 (Iowa 2021). Under Iowa law, law enforcement officers owe a duty to exercise all due care in the performance of their duties, and in particular to avoid violating Iowan's

---

[1] Notably, the Honorable Robert Pratt has rejected Polk County's argument on this particular issue in another lawsuit arising from an arrest this same night. (SDIA 4:21-CV-101). Judge Pratt concluded, "Plaintiff alleges sufficient facts such that it is plausible the e-mail from the Polk County Attorneys' Office constituted an official policy or directive resulting in his arrest and detention. Any additional issues regarding the existence and authority of the policy itself necessitate evidence and discovery." That ruling is filed as an attachment with this resistance.

constitutional rights. *Baldwin v. City of Estherville*, 915 N.W.2d 259 (Iowa 2018). The complaint is replete with examples of Defendants breaching this duty. Defendants participated in arresting individuals who were not rioting, not a part of an unlawful assembly, not destroying property, and not failing to disperse. A Polk County employee directed officers to file charges against these individuals despite a complete lack of evidence. These actions caused Plaintiffs harm. Count 11 should not be dismissed.

### G. Plaintiffs' respondeat superior claim should not be dismissed.

Polk County Defendants complain that Count 12, Respondeat Superior, should be dismissed because it is not an independent basis for liability. (DCD 88-1 at 16). But Plaintiffs have plausibly alleged that the employees of Polk County have committed various torts, including assault and battery, negligence, and violations of the Iowa Constitution. Although respondeat superior liability does not apply to claims for violations of the U.S. Constitution, it does apply to Plaintiffs' other claims. *See Baldwin v. City of Estherville*, 929 N.W.2d 691, 696, 703 (Iowa 2019) (noting a plaintiff's claim against a city under respondeat superior and the dissent's agreement that the city "may be held liable for state constitutional torts under a respondeat superior theory."); *see also* Iowa Code § 670.2(1) ("[E]very municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function."). While Polk County Defendants vaguely assert that respondeat superior may not be available due to "specific grounds and limitations" listed in "Iowa Code §§ 670.2-.5," they fail to put forth any articulable theory of immunity that would shield them from this claim. (DCD 88-1 at 16). Instead, Defendants rely on their position that there are no clear allegations against them in the petition. As described above, this is inaccurate. The respondeat superior claim should not be dismissed.

## V. CONCLUSION

The amended complaint plausibly states claims against the Polk County Defendants. The arguments to the contrary are more suited for a summary judgment motion: they ignore the well-pleaded facts of the complaint, and ask for a level of specificity and proof that is inconsistent with this Court's obligation to accept the facts of the complaint as true and construe them in Plaintiffs' favor. For these reasons and all other reasons discussed above, the motion to dismiss should be denied.

**PARRISH KRUIDENIER DUNN GENTRY BROWN BERGMANN & MESSAMER, L.L.P.**

By:   /s/ *Gina Messamer*
      Gina Messamer     AT0011823
      2910 Grand Avenue
      Des Moines, Iowa 50312
      Telephone: (515) 284-5737
      Facsimile: (515) 284-1704
      Email: gmessamer@parrishlaw.com
      **ATTORNEY FOR PLAINTIFFS**

**Electronically filed.**

**Copy to: Client**