**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **CIERRA DUNN et. al.,**  Plaintiffs,  vs.  **JOHN DOE 1 – 20 et. al.,**  Defendants. | **CASE NO. 4:21-cv-53**  **BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

**COMES NOW** the Plaintiffs and hereby provide this Brief in Support of Plaintiff's Motion to Compel Production of Documents:

**TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ................................................................................... 1
II.  STANDARD OF REVIEW .................................................................................... 4
III. ARGUMENT .......................................................................................................... 6
  A.  Sweeping reference to attorney client privilege, Iowa Code, and the Federal Rules of Evidence as grounds for objection are improper. ..................................... 6
  B.  The requested evidence is relevant and is not unduly burdensome. .............. 8
  C.  The state-specific privileges do not apply to these federal proceedings. ...... 10
V. CONCLUSION ........................................................................................................ 16

**I.   FACTUAL BACKGROUND**

Discovery has revealed that multiple officers, including many of the named defendants, have been interviewed by Des Moines Police Department's Office of Professional Standards (OPS) relating to actions taken the night of Plaintiffs' arrests. Several officers have testified in depositions about these interviews, describing being asked by OPS about instances of inappropriate uses of force. Det. Carter indicated that

1

everyone on Metro STAR was interviewed by OPS. Through these interviews, OPS sought to identify the officers who were captured on video using force. OPS interviews are typically audio and/or video recorded. Plaintiffs are also aware that several citizens have filed complaints against DMPD officers relating to actions taken the night of Plaintiffs' arrest.

Plaintiffs have named several John Doe defendants because DMPD and the other named defendants have not identified the officers involved in Plaintiffs' arrests. The arresting officers did not complete reports or record body camera. This makes the OPS interviews particularly important to Plaintiffs' case, because those interviews will likely shed light on which officers interacted with Plaintiffs and potentially avoid or narrow the need for depositions.

Accordingly, when Plaintiffs propounded their first round of discovery requests on Defendant City of Des Moines on May 19, 2021, several of Plaintiffs' requests sought documentation from the DMPD OPS. Plaintiffs also sought records relating to citizen complaints and officer employment records.

Des Moines responded on June 16, 2021 and acknowledged "the Office of Professional Standards (OPS) has open investigations from complaints made relating to actions taken during the 2020 protests." (Ex A at 5). Nevertheless, Des Moines objected to producing any OPS or employment-record documents. (Ex A). Des Moines has provided additional discovery responses since that time, but still refuses to provide OPS or employment records. (Ex B (10/14/21 supplemental RFP response)).

Des Moines states several reasons for refusing production. First, it objects to the extent the requests involve privileged legal communication. Second, it claims the requests

2

are overly broad and outside the scope of litigation. Third, Des Moines claims that the personnel files requested are "confidential" and "exempt from disclosure under Iowa Code Chapter 22." Finally, Des Moines claims it is "barred from providing such information under Iowa Code §80F.1(20)." Des Moines raises these objections to the following requests:

> **11:** A copy of any OPS interview videos related to complaints regarding actions taken during the 2020 protests.
>
> **20:** A complete copy of the personnel file(s) for the following officers with the Des Moines Police Department (medical information and personal address information may be withheld): [list of officers omitted]
>
> **22:** A copy of any and all disciplinary action(s) ever taken against any of the following officers as a law enforcement officer for the Des Moines Police Department or any other law enforcement agency. [list of officers omitted]
>
> **23:** A copy of any and all documents relating to any complaint ever lodged against any of the following officers during his or her employment with Des Moines, Iowa or any other employer. [list of officers omitted]
>
> **24:** A copy of any and all documents relating to any investigation involving any of the following officers, his or her employment, and/or professional, internal affairs, or complaint or disciplinary action ever lodged, investigated, or taken against any of the following officers during his or her employment with Des Moines, Iowa or any other employer. [list of officers omitted]

With respect to request No. 22, Des Moines has indicated it will provide employment records with the caveat that they will not provide disciplinary records. With respect to request No. 11, Des Moines also asserts the requested information is "confidential and protected information allowing the Defendant police department to engage in self-examination and internal review." (Ex B at 5).

Plaintiffs' counsel has personally conferred with counsel for Des Moines in a good faith effort to resolve this discovery dispute. Counsel for Des Moines has confirmed that any OPS or disciplinary employment records will not be provided without a court order or

3

the consent of the officer. Despite the fact that these requests have been pending since May 19, 2021, Des Moines has not conferred with the individual officers to determine if they will consent to the release of their OPS/disciplinary records. Since it is unknown if and when any of the officers will consent to the release of their OPS/disciplinary records, Plaintiffs now bring the present to compel production.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure recognize a liberal scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Discovery rules are to be broadly and liberally construed to fulfill discovery's purposes of providing the parties with "information essential to the proper litigation of all relevant facts, to eliminate surprises, and to promote settlement." *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 509 (S.D. Iowa 1992). As the Eighth Circuit has stated, discovery is not:

> limited to materials that might be deemed relevant and admissible at trial. ….Rather, discovery is a investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and, as this case well illustrates, the veracity of those persons and purported evidence, even if the evidence discovered is later deemed not admissible.

*Sentis Group, Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014).

The party resisting production bears the burden of establishing lack of relevancy or undue burden. *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). The resisting party must demonstrate the requested information

4

does not come within the scope of relevance or else are of such marginal relevance that the potential harm occasioned by discovery outweighs the ordinary presumption favoring disclosure. *Id.*

The same is true for establishing that attorney-client privilege applies. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) ("[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection[.]"). Whether a document or communication is privileged is a factual determination to be made by the Court. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). Finally, in determining whether a state law privilege asserted by the resisting party applies, the Court must engage in a case-sensitive enquiry based on the specific allegations made, and the nature of the materials requested. *Davidson v. Union Pac. R.R. Co.*, No. 3:20-CV-00063 KGB, 2020 WL 7265189, at *2 (E.D. Ark. Dec. 10, 2020).

Should the court grant this motion to compel, the court must require "the party 'whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.'" *Arnold v. ADT Sec. Services, Inc.*, 627 F.3d 716, 720 (8th Cir. 2010) (quoting Fed. R. Civ. P. 37(a)(5)(A)). Payment of expenses and fees is required unless the court finds one of the following:

> (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, (2) the nondisclosure was substantially justified, or (3) other circumstances would make the award of expenses unjust.

*Arnold*, 627 F.3d at 720.

### III. ARGUMENT

Defendant argues that records relating to Plaintiffs requests are protected by Iowa Code chapter 22 and 80F, which provide for confidentiality of certain documents related to internal investigations by the OPS and to employee files. It also repeats its objections regarding relevance, attorney client privilege, burdensomeness. These objections are boilerplate objections, which should be rejected as improper for failing to clearly articulate the specific grounds for resisting production and because the state law privileges they assert do not apply in a federal court.

#### A. Sweeping reference to attorney client privilege, Iowa Code, and the Federal Rules of Evidence as grounds for objection are improper.

In their repeated objections, Des Moines states the information sought is "exempt from disclosure under Iowa Code Chapter 22." Reference to an entire Chapter of Iowa Code as a whole is uninformative as to the basis for an objection. Chapter 22 contains seventeen separate sections: giving Des Moines the benefit of the doubt and assuming the onus of their objection rests on Iowa Code section 22.7—confidential records—there are seventy (74) subparts classifying seventy (74) different types of public records to be kept confidential. Iowa Code § 22.7. The lack of specificity in this objection renders it improper. See *Bell v. Lombardi*, No. 4:14–CV–0027, 2015 WL 402084, *3 (E.D. Mo. January 28, 2015) (defendant in similar Section 1983 action "failed to meet his burden in opposition to the discovery by providing specific explanations or factual support for his objections."). Plaintiffs cannot be required to guess as to which of the seventy plus exceptions in Iowa Code § 22.7 is the one upon which Des Moines relies.

Likewise, the objections that Plaintiffs seek "material outside the scope of the litigation as irrelevant pursuant to Federal Rule of Evidence 401 and 402" are "text-book

examples of what federal courts have routinely deemed to be improper objections." *St. Paul Reinsurance Co.*, 198 F.R.D. at 512. The party resisting discovery has the burden to provide substantive objections to requests which articulate sound reasons for refusal. *Quality Off. Furnishings, Inc. v. Allsteel, Inc.*, No. 3:17-CV-41-JEG-HCA, 2018 WL 7076747, at *2 (S.D. Iowa Sept. 26, 2018). These boilerplate objections fail to show that the requested documents "either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure". *St. Paul Reinsurance Co.*, 198 F.R.D. at 511. Having failed to meet the basic burden of articulating meaningful objections to production, either under Iowa Code or for more general objections to relevance, Des Moines must provide the requested documents.

Finally, if Des Moines wishes to assert attorney client privilege, it must first provide a compete log of the communications or materials it wishes to withhold. Fed. R. Civ. P. 26(b)(5)(A). Des Moines has not provided a log that sufficiently "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed" such that "without revealing information itself privileged or protected, [it] will enable other parties to assess the claim". Fed. R. Civ. P. 26(b)(5)(A)(ii). ". A party that wishes to shield materials under this privilege must "produce a detailed privilege log stating the basis of the claimed privilege for each document in question." *Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir.1997). Des Moines has not met this minimum requirement and cannot use such vague assertions to block production.

**B.     The requested evidence is relevant and is not unduly burdensome.**

The resisting party has the burden of establishing lack of relevancy or undue burden. *St. Paul Reinsurance*, 198 F.R.D. at 511. Barring any meaningful articulation of reasons to deny access, the party requesting discovery may have such documents if those materials fit into the broadly construed category of "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case". *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). This is a low standard. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (noting Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant" even if they are not ultimately admissible).

In depositions of officers who were on-duty when Plaintiffs were arrested, several officers have mentioned being questioned by OPS because OPS was trying to identify several officers who used force that evening. These interviews involved not only DMPD officers, but also other metro-area officers who were assigned to the Metro STAR Team that evening. Plaintiffs also have information that several citizens submitted complaints to OPS regarding actions taken by officers that evening, which would then trigger an investigation.

Interviews of the officers and documents involving the internal investigation of wrongdoing by police regarding the events of May 30–31, 2020 are likely to contain exactly the evidence required to prove that wrongdoing in this civil rights case. Des Moines has represented in discovery that it has been unable to identify arresting officers for half of the citizens arrested that night. Discovery has also revealed that the officers on-duty that night were not required to complete reports, even if they arrested someone. There is a dearth of documentation regarding the actions officers took towards various

citizens. This is why Plaintiffs' Amended Complaint contains twenty John Doe defendants. OPS and other disciplinary records thus are particularly necessary to identify the officers who engaged in impermissible conduct.

Likewise, personnel files are relevant to show evidence of the deliberately indifferent practices and customs of the DMPD, including evidence of "permitting City of Des Moines police officers to violate the constitutional rights of citizens," "tolerating, encouraging, and permitting collusive statements by involved officers in such situations," and most importantly "failing to adopt a system to identify, track, and monitor problematic police behavior and patterns of unconstitutional conduct" as well "as failing to take adequate disciplinary measures against City of Des Moines police officers who violate the civil rights of citizens." (ECF No. 25-1 ¶ 63). Evidence of repeated violations and a failure to take corrective action are front and center in Plaintiffs' requests for disciplinary, investigative, and personnel records. All such records withheld by Des Moines are relevant.

Further, the specific records requested would not be unduly burdensome to produce. Des Moines does not point to any specific, realistic logistical barrier to producing the requested investigatory or personnel files. See *St. Paul Reinsurance Co.*, 198 F.R.D. at 513 (reiterating the need for specific, articulated reasons for burdensomeness objections). Production of the OPS and disciplinary documents could be achieved with minimal effort on the part of Defendant, as they are the exact sort to be maintained in an orderly and accessible manner, requiring little collateral effort to gather and deliver to Plaintiffs. The same is true of personnel records. The Plaintiffs' requests are not the sort that will send the Des Moines into a major paperchase. Compliance will not unduly burden

Defendant, particularly in light of the importance of these documents to the overall litigation.

### C. The state-specific privileges do not apply to these federal proceedings.

#### 1. Federal law governs whether a state-law privilege under applies.

The privileges crafted by the state legislature in Iowa Code Chapter 22 and 80F do not apply to Plaintiffs' case before a federal court, which contains federal 42 U.S.C § 1983 claims, as well as claims under the Iowa Constitution and other common law torts. Federal Rule of Evidence 501 provides guidance:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

In situations such as the present matter, where federal law claims and state law claims are mixed in the same pleading, "courts have consistently held that the asserted privileges are governed by principles of federal law." *Hansen v. Allen Mem'l Hosp.*, 141 F.R.D. 115, 121 (S.D. Iowa 1992); *see also United States v. Ghane*, 673 F.3d 771, 780 (8th Cir. 2012) ("All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501."); *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("[T]he Eighth Circuit has suggested that federal privilege law applies to federal question cases that include both federal and state claims[.]").

This is particularly true when dealing with issues of discoverability. *Hansen*, 141 F.R.D. at 121 (noting "the federal law of privileges [Rule 501] should govern all claims of privilege raised in the litigation—at least where the issue is the discoverability of evidence"). In *Hansen*, the Court confronted a similar issue with an assertion of a statutory

privilege regarding certain tape recordings in the possession of the Iowa Civil Rights Commission. *Id.* There, the defendant resisted production pursuant to Iowa Code § 601A.15(4). *Hansen* cited a plethora of cases that held assertions of privilege in pendant federal and state law claims are "governed by principles of federal law." *Id.* The Court concluded that while "[t]he Eighth Circuit Court of Appeals does not appear to have addressed this question," there was still "sound logic for this view" and "[t]hus, the federal law of privilege controls even when pendent state law claims are asserted." *Id.* *Hansen* further concluded that applying the state-law privilege would result in significant confusion, because it would result in conflicting outcomes where a party must disclose material for the federal claims, but may withhold it for the state law claims. *Id.* (noting that applying Rule 501 to analysis of both state and federal claims helps "to prevent[] the inconsistent application of state law privilege claims in the same case.");  *cf. In re Bieter Co.*, 16 F.3d 929, 930, 935 (8th Cir. 1994) (applying federal common law to a case with "a rather tortured history" including RICO claims and concurrent state law actions)

    **2.**    **Neither Iowa Code §§ 22.7 nor 80F.1 bar discovery**

Besides the fact that federal law governs this issue, the plain language of Iowa Code §§ 22.7 and 80F.1 allow for the requested discovery. Chapter 22 is the Iowa Open Records law.  Iowa Code § 22.7(11)(a) states that "[p]ersonal information in confidential personnel records of government bodies" is not subject to disclosure under the Iowa Open Records laws. Plaintiffs are not seeking these records under the Iowa Records laws, but rather through civil discovery. The Iowa Supreme Court has made clear that chapter 22 does not bar discovery in a civil case: Even in Iowa state courts, use of Chapter 22 as a sort of discovery privilege is disfavored: "Iowa Code section 22.7 does not create a 'true privilege against discovery of ... confidential information.'" *Mitchell v. City of Cedar*

11

*Rapids*, 926 N.W.2d 222, 228 (Iowa 2019). "Litigants suing the government ordinarily may obtain relevant records through discovery notwithstanding confidentiality provisions in Iowa Code section 22.7, but a protective order may be required precluding disclosure to nonparties." *Id.* at 225. Such a protective order is in place in this case. (ECF No. 9). There is no legitimate basis to say that chapter 22 bars Plaintiffs' requested discovery.

Turning then to Iowa Code § 80F.1, which addresses officer rights in the context of internal investigations. It states:

> The employing agency shall keep an officer's statement, recordings, or transcripts of any interviews or disciplinary proceedings, and any complaints made against an officer confidential *unless otherwise provided by law* or with the officer's written consent.

Iowa Code § 80F.1(20) (emphasis added). The text of § 80F.1(20) specifically excludes an exception that allows for disclosure in cases like this. The Federal Rules of Civil Procedure count as "otherwise provided by law."

### 3. Federal interests weigh against the privileges under Iowa Code §§ 22.7 and 80F.1.

Even assuming either Iowa Code § 22.7 or 80F.1 stated a privilege that applies to the requested discovery, the mere fact that "courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege." *Hansen*, 141 F.R.D. at 122. In this case, accommodating such a privilege in this federal civil rights case would come at a "substantial cost to federal substantive and procedural policy." *Heilman*, 287 F.R.D. at 472. Because a "strong countervailing federal interest" exists, a court should affirmatively deny the state privilege. *Id.* at 473.

Several countervailing interests require this Court to find that the privileges asserted by Des Moines do not apply in this case. Federal courts have an "especially strong interest in applying federal rules to actions with alleged § 1983 violations" because

of the weighty concerns of unimpeded access to federal constitutional protections. *Heilman*, 287 F.R.D. at 473 (denying Minnesota physician-patient privilege); *see also Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994) (finding that even though plaintiff's case originated in state court and contained state tort claims, because "gravamen of the plaintiff's complaint concerns a violation of his federal constitutional right to be free from the use of excessive force," federal common law would apply). Here, officers engaged in protracted misconduct during a period of civil unrest, in a highly publicized event. The need to hold local police accountable to the national standards of conduct enshrined in the U.S. Constitution is significant, and meaningful access to evidence in Defendant's possession regarding police response—particularly evidence of police misconduct—is critical.

Finally, any isolated evidentiary privileges which in fact operate to "exclude potentially relevant evidence" are disfavored in federal common law. *Ray v. Winslow House, Inc.*, No. C97-0226, 1999 WL 33655723, at *2 (N.D. Iowa Jan. 15, 1999) (citing *United States v. Nixon*, 418 U.S. 683, 709 (1974) for the principle that "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence"). Such state rules naturally conflict with Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). Even if adopted, state privileges would have to be narrowly construed. *Ray*,1999 WL 33655723, at *2. Des Moines argues for broad application of both asserted privileges, hoping to include any and all information that is or may be used for "self-examination and internal review", as well as virtually all portions of employee files that contain information

pertinent to the present suit. (*See e.g.* Ex B. at 10). These privileges, if approved, would effectively shield from discovery the most important information about misconduct by officers and actively defeat the very purpose of discovery.

### 4. The specific facts of this case require the disclosure of the requested discovery.

Additionally, the factual considerations of the case must be considered. Des Moines is attempting to withhold information that is no doubt relevant to Plaintiffs' claims. *Davidson*, 2020 WL 7265189, at *2 (noting that where the requested information is directly at issue in the lawsuit, its discoverability should be favored). The complaints and investigation information are likely to serve as "evidence of a pattern of excessive force" or policies allowing for such force. *Burnikel v. Fong*, No. 415CV00050JAJHCA, 2016 WL 11597984, at *4 (S.D. Iowa June 28, 2016) (allowing discovery of personnel files because "Plaintiff has the burden to prove a 'widespread custom or practice' under § 1983"); ); *Ashford v. City of Milwaukee*, 304 F.R.D. 547 (E.D. Wis. 2015) (ordering production of personnel files, because they were relevant to the *Monell* claims); *Brookes v. Cnty. of San Joaquin*, 275 F.R.D. 528 (E.D. Cal 2011) (same); *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1206 (D.N.J. 1996) (ordering production "because documentation of civilian complaints and the police department's resultant investigations are relevant and necessary to the plaintiffs' burden of establishing the requisite policy or custom and causation required for municipal liability under § 1983").

Access to this information is vital for Plaintiff to properly identify and name all officers involved in illegal activity noted in Plaintiffs' petition. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (recognizing plaintiff must be given opportunity to identify John Doe defendants through discovery). These as-yet unidentified officers are likely to be

noted in disciplinary documents concerning those same events, which Plaintiffs have a right to discover. *Munz*, 758 F.2d at 1257 (noting right to discovery to identify doe defendants). In fact, based solely on that issue, the District Court has the power to intervene and "order[] disclosure" of such identifying information. *Id*. Applying a state privilege to block such an elementary matter would be counter to this truth-seeking principle, with no reasonable countervailing benefit.

Likewise, the specific materials protected by Iowa Code chapter 22 and 80F have already been found to be poor candidates for federal privilege, even when state law provides such protection. What the Defendant argues for is effectively the right of an officer to maintain confidentiality in their own records within the police agency. State protections of personnel files have been repeatedly denied where they contain relevant information, both in and out of the 8th Circuit. See *Royce v. Douglas Cty. Sch. Dist. No. 54*, No. 8:11CV328, 2012 WL 2952381, at *2 (D. Neb. July 19, 2012) ("[F]ederal courts have found that personnel files of employees, though protected from disclosure by state statute, are relevant and subject to production as part of discovery in claims involving federal rights."); *Case v. Platte County, Neb.*, No. 8:03CV 160, 2004 WL 1944777, *2 (D. Neb. June 11, 2004) (same); *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 n. 6 (9th Cir.1987) (personnel files discoverable in federal question cases, regardless of privilege claims); *Welsh v. City & County of San Francisco*, 887 F.Supp. 1293, 1301 (N.D.Cal.1995). Such a state privilege, which serves the purpose of blocking precisely the sort of information that would be pertinent in a § 1983 claim, represents a "substantial cost to federal substantive and procedural policy", which must give way to the "strong countervailing federal interest." *Heilman*, 287 F.R.D. at 473

Finally, the existent protective order mitigates the intrusion on the officers' privacy. *Hansen*, 141 F.R.D. at 122 (noting that citizens of a state wherein a particular privilege exists should not be unduly "disappointed by a mechanical and unnecessary application of the federal rule."). The parties have agreed to a joint protective order that allows for documents to be designated as "confidential information," which then restricts the dissemination of that material. (ECF No. 9).

## V. CONCLUSION

Des Moines should be ordered by this Court to produce the requested files and documents, specifically requests No. 11, 20, 22, 23, and 24. Because the refusal to produce such documents lacks any clear grounds, Des Moines should further be ordered to pay Plaintiffs' costs and attorney's fees associated with this Motion. *Arnold*, 627 F.3d at 720.

**PARRISH KRUIDENIER DUNN GENTRY BROWN BERGMANN & MESSAMER, L.L.P.**

By: /s/ *Gina Messamer*
Gina Messamer           AT0011823
2910 Grand Avenue
Des Moines, Iowa 50312
Telephone: (515) 284-5737
Facsimile: (515) 284-1704
Email: gmessamer@parrishlaw.com
**ATTORNEY FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 14, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system and a true copy of the foregoing was served electronically on the attorneys of record.

By: /s/ *Gina Messamer*

**Copy to: Client**