IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CIERRA DUNN, VERCHON DEBROSSARD, MICHAEL KLINGENBERG, TRENTAE FUGATE, CAMERON LARD, SOPHIA JACOBSEN, JIVONTE JOHNSON, JAYVIONE LEWIS, MAKENZIE MOLER, JAQUAN PATTON, JOSHUA PETEFISH, TYLER ROBINSON MCCUDDIN, EMMA TIMBERLAKE, HARRISON WOODS, and TONY YOUNG, | **No. 4:21-cv-00053-RGE-HCA** |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION TO DISMISS** |
| JOHN DOE 1 – 22, BRIAN BUCK, BRANDON HOLTAN, CHRIS HARDY, BRENDAN EGAN, JEREMY BETTS, TYLER PALMER, DAVE CHIODO, TIMOTHY COUGHENNOWER, BENJAMIN MCCARTHY, NICK SMITH, ADAM HERMAN, TODD WILSHUSEN, KEN CALLAHAN, RYAN ARMSTRONG, TYLER MOFFATT, JACOB HEDLUND, KYLE GRUVER, NICHOLAS VALENTINE, CLARK ALLEN, ERNESTO ESCOBAR HERNANDEZ, CHAD NICOLINO, JEFFREY GEORGE, BRADLEY YOUNGBLUT, JAKE FORRESTER, KIRK BAGBY, DANA WINGERT, CITY OF DES MOINES, IOWA, POLK COUNTY, IOWA, CITY OF WEST DES MOINES, IOWA, and CITY OF ALTOONA, IOWA, | |
| Defendants. | |

## I.  INTRODUCTION

Fifteen individually named Plaintiffs sue Defendants—forty-nine named and unnamed law

enforcement officers, individually and in their official capacities, and three municipalities.

Plaintiffs allege violations of their federal and state constitutional rights and bring tort claims under Iowa law. Plaintiffs' claims arise from events occurring during a protest in Des Moines, Iowa.

Defendants Polk County Sheriff's Deputies—Brad Hook, Nick Smith, Ken Callahan, Jacob Lovell, and Bryon Bach—and Polk County, Iowa ("the Polk County Defendants") jointly move to dismiss Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiffs fail to state a claim upon which relief can be granted. Defs.' Mot. Dismiss ¶ 5, ECF No. 88; Defs.' Br. Supp. Mot. Dismiss 4, ECF No. 88-1. Plaintiffs resist the motion to dismiss. Pls.' Resist. Mot. Dismiss, ECF No. 95. After the Polk County Defendants filed their motion to dismiss and Plaintiffs filed their resistance, Plaintiffs filed a second amended complaint. In the second amended complaint, Plaintiffs omitted all claims against Hook, Lovell, and Bach. *See* Second Am. Compl., ECF No. 119. Plaintiffs also dropped multiple counts against Callahan and Smith. *See id.*[1] Additionally, Plaintiff Tyler Robinson McCuddin moves to dismiss all of his claims against Defendants. Pl. McCuddin's Mot. Dismiss ¶¶ 2–3, ECF No. 131. McCuddin's motion seeks to dismiss all claims against Defendant Brian Buck. *Id.* ¶ 4. The Court grants this motion. Only the counts remaining against the Polk County Defendants as of the second amended complaint are at issue here. For the reasons set forth below, the Court grants in part and denies in part the Polk County Defendants' motion.

---

[1] The Court determines the second amended complaint filed at ECF No. 119 is the operative document. After filing the second amended complaint, Plaintiffs moved to refile the second amended complaint with a corrected caption. ECF No. 126. The Court granted the motion, ordering the Clerk of Court to detach and file Plaintiffs' purported second amended complaint with the corrected caption. ECF No. 130. The Clerk of Court filed the document as ordered. ECF No. 132. The refiled second amended complaint did not correct the caption. *See id.* at 1. Plaintiffs then filed—without court authorization—a sixty-six-page document docketed as an "errata." The document corrected the caption pursuant to the Court's order granting Plaintiffs' motion to file the second amended complaint with the corrected caption. ECF No. 133; *see also* ECF No. 130. The document also removed Plaintiff Tyler Robinson McCuddin's claims and his and Defendant Brian Buck's names from the caption. ECF No. 133. The Court does not consider Plaintiffs' multiple documents attempting to correct the caption.

## II.    BACKGROUND

The Court accepts the facts set forth in the second amended complaint as true for the purpose of analyzing the motion to dismiss. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

Protesters gathered in downtown Des Moines on the evening of May 30, 2020, to protest the death of George Floyd. ECF No. 119 ¶¶ 56–57. The protest generated a large police presence and continued until the early morning hours. *Id.* ¶¶ 57, 60; ECF No. 95 at 4. Around 2:35 a.m., a group of individuals broke into a downtown grocery store. ECF No. 119 ¶¶ 81–82. Law enforcement officers arrived at the scene and canvassed the vicinity. *Id.* ¶ 87. Officers from the Des Moines Police Department and Polk County Sheriff's Department arrested dozens of individuals they found downtown. *Id.* ¶¶ 106–07, 117. Plaintiffs Cierra Dunn, Trentae Fugate, and Emma Timberlake were among the persons arrested. *Id.* ¶¶ 144–47, 372. Dunn, Fugate, and Timberlake contend their arrests were not supported by probable cause or reasonable suspicion. *Id.* ¶¶ 107, 152, 377.

Dunn, Fugate, and Timberlake allege Callahan and Smith were involved in their unlawful arrests. Fugate alleges Callahan was one of the officers who arrested him. *Id.* ¶ 159. Dunn and Fugate were arrested walking from a downtown hotel to Dunn's car at approximately 3:30 a.m. on May 31, 2020. *Id.* ¶¶ 144–47, 154, 165. Dunn and Fugate allege Callahan arrested Fugate, seized his firearm, and searched Dunn's vehicle. *See id.* ¶ 162–64.

Plaintiffs also allege Callahan and Smith participated in the arrests of Plaintiffs Jaquan Patton, Jayvione Lewis, Jivonte Johnson, Emma Timberlake, Sophia Jacobsen, and Tony Young. The above-mentioned Plaintiffs were arrested in downtown Des Moines around 3:20 a.m. on May 31, 2020. *Id.* ¶ 372. Smith was one of two law enforcement officers who arrested Timberlake. *Id.* ¶ 386. Callahan "provided security while other officers arrested the group." *Id.* ¶ 383.

3

Plaintiffs claim they were arrested and charged pursuant to an unlawful policy promulgated by a Polk County employee. *Id.* ¶ 122; ECF No. 95 at 16. On May 31, 2020—hours after the arrests at issue—Assistant Polk County Attorney Jeffrey Noble sent an email instructing law enforcement officers to charge individuals arrested that morning and the night before with rioting, failure to disperse, and unlawful assembly. ECF No. 119 ¶ 122. Plaintiffs allege Noble's email constituted an official municipal policy resulting in Plaintiffs' arrests and detentions, and the filing of false charges against them. ECF No. 95 at 16.

Dunn and Fugate were charged by Des Moines Police Officer Trudy Paulson with participation in a riot. ECF No. 119 ¶ 172; *see* First Am. Compl., ¶ 40, ECF No. 30. Fugate was also charged by Defendant Des Moines Police Sergeant Chad Nicolino with unlawful assembly and by Defendant Des Moines Police Officer Jeffery George with failure to disperse. ECF No. 119 ¶ 42–43, 174. The language in the affidavit filed with Fugate's complaints "contain[ed] a verbatim recitation of the charging language" from Noble's email. *Id.* ¶ 175; *see also* ECF No. 95 at 8. Timberlake was charged with the same three counts: participation in a riot, unlawful assembly, and failure to disperse. ECF No. 119 ¶ 399, 401. The charging document filed against Timberlake also used language identical to Noble's email. ECF No. 95 at 7. All charges against Dunn, Fugate, and Timberlake were later dismissed. ECF No. 119 ¶¶ 183–87, 406–07.

Plaintiffs filed a complaint in the Iowa District Court for Polk County. Pet., ECF No. 1-3. Defendants City of Des Moines and Des Moines Police Officers removed to this Court.[2] Notice Removal, ECF No. 1. Plaintiffs moved to amend their complaint under Federal Rule of Civil Procedure 15. Pls.' Mot. Am. Compl., ECF No. 23. Defendants did not resist. Plaintiffs added the Polk County Defendants as parties in their first amended complaint and alleged twelve counts

---

[2] The Polk County Defendants were not named as Defendants at the time of removal. *See* Notice Removal, ECF No. 1.

against them. First Am. Compl., ECF No. 30; *see also* ECF No. 88-1 at 8. The Polk County Defendants move to dismiss all counts against them. ECF No. 88. Plaintiffs resist. ECF No. 95. After the motion was fully briefed, Plaintiffs filed a second amended complaint withdrawing several counts and removing three individual Polk County Defendants. ECF No. 119. The remaining counts against the Polk County Defendants are substantially unchanged from the first amended complaint. As such, although the motion to dismiss is targeted at the first amended complaint, the Court considers the arguments raised in the motion to dismiss as they apply to the remaining applicable counts in the second amended complaint.

The parties did not request oral argument, and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c). Having considered the parties' briefing and applicable law, the Court grants in part and denies in part the Polk County Defendants' motion to dismiss.

Additional facts are set forth below as necessary.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56). "In deciding a motion to dismiss under Rule 12(b)(6), a

court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.,* 690 F.3d 951, 955 (8th Cir. 2012).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV.   DISCUSSION

The Court addresses the counts against the individual defendants—Callahan and Smith—and municipal defendant—Polk County—separately. The Court first addresses Counts 1, 2, 7, 8, 9, 10 and 12 against Callahan and Smith. The Court then addresses Counts 5, 6, and 11 against Polk County.

### A.   Callahan and Smith

Dunn brings six claims against Callahan, individually and in his official capacity, for 1) illegal seizure under 42 U.S.C. § 1983 in violation of the Fourth Amendment of the U.S. Constitution (Count 1); 2) illegal seizure in violation of article I, section 8 of the Iowa Constitution (Count 2); 3) malicious prosecution under Iowa law (Count 7); 4) false arrest and false imprisonment under Iowa law (Count 8); 5) negligence, gross negligence, and recklessness under Iowa law (Count 10); and 6) malicious prosecution under 42 U.S.C. § 1983 in violation of the Fourth Amendment of the U.S. Constitution (Count 12). ECF No. 119, ¶¶ 18, 418–28,

463–72, 478–84, 490–95.

Fugate brings seven claims against Callahan, individually and in his official capacity, for 1) illegal seizure under 42 U.S.C. § 1983 in violation of the Fourth Amendment of the U.S. Constitution (Count 1); 2) illegal seizure in violation of article I, section 8 of the Iowa Constitution (Count 2); 3) malicious prosecution under Iowa law (Count 7); 4) false arrest and false imprisonment under Iowa law (Count 8); 5) assault and battery under Iowa law (Count 9); 6) negligence, gross negligence, and recklessness under Iowa law (Count 10); and 7) malicious prosecution under 42 U.S.C. § 1983 in violation of the Fourth Amendment of the U.S. Constitution (Count 12). *Id* ¶¶ 18, 418–28, 463–84, 490–95.

Timberlake brings seven claims against Smith, individually and in his official capacity, for 1) illegal seizure under 42 U.S.C. § 1983 in violation of the Fourth Amendment of the U.S. Constitution (Count 1); 2) illegal seizure in violation of article I, section 8 of the Iowa Constitution (Count 2), 3) malicious prosecution under Iowa law (Count 7), 4) false arrest and false imprisonment under Iowa law (Count 8); 5) assault and battery under Iowa law (Count 9); 6) negligence, gross negligence, and recklessness under Iowa law (Count 10); and 7) malicious prosecution under 42 U.S.C. § 1983 in violation of the Fourth Amendment of the U.S. Constitution (Count 12). *Id.* ¶¶ 17, 418–28, 463–84, 490–95.

The Court addresses each claim below.

### 1.      Illegal seizure under the Fourth Amendment (Count 1)

The Fourth Amendment guards against arrest and prosecution without probable cause. *Greenman v. Jessen*, 787 F.3d 882, 890–91 (8th Cir. 2015). "A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause." *White v. Jackson*, 865 F.3d. 1064, 1074 (8th Cir. 2017) (internal quotation marks and citation omitted). "Probable cause exists to make a warrantless arrest when the totality of the circumstances at the time of the arrest are

sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017) (internal quotation marks and citation omitted). "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (omission in original) (internal quotation marks omitted) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). The fact that the person arrested is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Whether a law enforcement officer had probable cause at the time of arrest is a question of law. *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

a.    Dunn

Dunn makes two allegations against Callahan: 1) he seized her without reasonable suspicion or probable cause and 2) he charged her with crimes without probable cause. ECF No. 119 ¶ 419. Dunn does not provide sufficient factual allegations to support either claim. With respect to her first claim, Dunn does not allege Callahan assisted in her arrest, transported her to jail, booked her on criminal charges, or filed a criminal complaint against her. *See id.* ¶¶ 153–72. She does allege Callahan searched her vehicle. *Id.* ¶ 159. But she does not allege Callahan seized any property of hers. These allegations are insufficient to give rise to an inference of illegal seizure. With respect to her second claim, Dunn does not allege Callahan charged her with any crimes. She alleges "Defendant Police" booked her into the Polk County jail on charges of criminal mischief and rioting. *Id.* ¶ 170.[3] Dunn also alleges Paulson filed a criminal complaint against her on May 31, 2020, charging her with participation in a riot. *Id.* ¶ 172.

These allegations are insufficient to support an inference Callahan charged Dunn with

---

[3] Plaintiffs use the term "Defendant Police" to refer to all named and unnamed law enforcement officers in the second amended complaint. *See* ECF No. 119 ¶ 16.

crimes without probable cause. Dunn's complaint is insufficient to establish a plausible claim upon which relief may be granted. As such, the Court dismisses Dunn's claim against Callahan in Count 1.

b.     Fugate

Fugate asserts three allegations against Callahan in Count 1. First, he alleges Callahan "is one of the officers" who arrested him. *Id.* ¶¶ 159, 419. Second, he alleges Callahan is one of the officers who "seized his firearm" and "searched [Dunn's] vehicle." *Id.* ¶ 159. Lastly, he alleges Callahan charged him with crimes without probable cause. *Id.* ¶ 419. Fugate alleges Callahan violated his Fourth Amendment rights because he had no probable cause to take these actions. *Id.* ¶ 419. Fugate was charged at various times with criminal mischief, rioting, participation in a riot, unlawful assembly, and failure to disperse. *Id.* ¶¶ 170–74. All charges against Fugate were eventually dismissed. *Id.* ¶¶ 183–87. The Court first considers whether Fugate plausibly alleges Callahan lacked probable cause to arrest him for each crime charged. The Court then considers whether Fugate plausibly alleges Callahan seized his firearm without probable cause and, finally, whether Callahan charged Fugate with crimes without probable cause.

Iowa law defines criminal mischief as "[a]ny damage, defacing, alteration, or destruction of property . . . done intentionally by one who has no right to so act." Iowa Code § 716.1. Fugate alleges no law enforcement officer saw him destroy property, nor did any officer have "reason to believe that [he was] involved in the destruction of property." ECF. No. 95 at 13.

Iowa law defines a riot as "three or more persons assembled together in a violent and disturbing manner and with any use of unlawful force or violence by them or any of them against another person, or causing property damage." Iowa Code § 723.1. It is a crime under Iowa law to "willingly join[] in or remain[] a part of a riot, knowing or having reasonable grounds to believe that it is such." *Id.* Fugate alleges he was not in a group of "three or more" persons.

ECF No. 95 at 12. He alleges he was approached by Callahan and other law enforcement officers as he and Dunn were leaving a hotel in downtown Des Moines. ECF No. 119 ¶¶ 143–46. He states neither he nor Dunn were "being violent or threatening." *Id.* ¶ 148. He further asserts law enforcement officers "never saw [him] use force or violence against others or property." ECF No. 95 at 12.

Iowa law defines unlawful assembly as a group of "three or more persons assembled together," in which at least one person is "acting in a violent manner, and with intent that they or any of them commit a public offense." Iowa Code § 723.2. Again, Fugate alleges he was not in a group of three or more persons, and that neither he nor Dunn were acting violently. ECF No. 119 ¶¶ 143–48.

Iowa's failure to disperse law provides, "[a] peace officer may order the participants in a riot or unlawful assembly or persons in the immediate vicinity of a riot or unlawful assembly to disperse. Any person within hearing distance of such command, who refuses to obey, commits a simple misdemeanor." Iowa Code § 723.3. Fugate alleges he was not in the immediate vicinity of a riot or unlawful assembly. ECF No. 95 at 13. He further alleges there was no order to disperse he could have disobeyed. *Id.*

At this stage, the Court finds Fugate plausibly alleges a claim for illegal seizure under the Fourth Amendment. Viewing the facts alleged in the light most favorable to Fugate, he pleads facts supporting the inference Callahan lacked probable cause to arrest him for the charges discussed above.

Fugate next alleges Callahan seized his firearm "without a warrant or other legal cause to do so." *Id.* ¶ 419; *see also id.* ¶ 159. "A 'seizure' of property occurs under the Fourth Amendment where there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). The Fourth Amendment permits

"a brief detention of property on the basis of . . . 'reasonable, articulable suspicion' that it contains contraband or evidence of criminal activity." *Smith v. Ohio*, 494 U.S. 541, 1289 (1990) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). In determining whether a law enforcement officer had reasonable suspicion to support a seizure, the Eighth Circuit has instructed courts to examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be "understood by those versed in the field of law enforcement." *United States v. Demoss*, 279 F.3d 632, 636 (8th Cir. 2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418, (1981)).

Fugate alleges he told law enforcement officers when he was arrested that he had a permit to carry weapons. ECF No. 119 ¶ 162. He alleges at least one officer verified his permit was legitimate. *See id.* Nevertheless, Callahan allegedly seized Fugate's firearm from his person. *Id.* ¶¶ 159, 163. Fugate alleges Callahan found a second firearm registered to him upon searching Dunn's vehicle. *Id.* ¶ 164. Fugate alleges law enforcement officers also seized this firearm. *Id.* He alleges his firearms were not returned to him for several weeks. *Id.* ¶¶ 179, 181. Fugate alleges sufficient facts to support a claim for illegal seizure of property. The same factual allegations supporting Fugate's claim for arrest without probable cause also support his claim for illegal seizure of property. He plausibly alleges a "meaningful interference" with his possessory interest in his property. *Cf. Jacobson*, 466 U.S. at 113. Thus, at this stage, Fugate's claim against Callahan for illegal seizure of property may proceed.

Finally, Fugate alleges Callahan charged him with crimes without probable cause. ECF No. 119 ¶ 419. But Fugate does not allege Callahan charged him with any crime. *See id.* ¶¶ 170–74. He alleges "Defendant Police" initially booked him into the Polk County jail on charges of criminal mischief, rioting, and unlawful assembly. *Id.* ¶ 170. He then alleges Paulson filed a criminal complaint against him on May 31, 2020, charging him with participation in

a riot. *Id.* ¶ 172; *see* ECF No. 30 ¶ 40. He alleges George and Nicolino filed criminal complaints against him the next day charging him with failure to disperse and unlawful assembly. ECF No. 119 ¶ 174.

Fugate does not plead any facts that would support a claim against Callahan for charging him without probable cause. As such, this aspect of Fugate's Count 1 claim against Callahan does not survive. Dismissal of Fugate's claims against Callahan in Count 1 for arrest without probable cause and illegal seizure of his property, however, is not warranted at this stage. The Court finds these two aspects of Fugate's Count 1 claim against Callahan are sufficiently alleged to proceed.

c.    Timberlake

Timberlake alleges Smith arrested her without reasonable suspicion or probable cause and charged her for crimes without probable cause. ECF No. 119 ¶ 419. The Court considers each aspect of Count 1 against Smith separately, beginning with the illegal seizure claim.

Timberlake alleges Smith was one of two officers who arrested her without reasonable suspicion or probable cause. *See id.* ¶¶ 377, 388. Timberlake alleges she was arrested "almost immediately" after she and a group of friends parked in downtown Des Moines and left the vehicle to start walking to a friend's apartment. *Id.* ¶¶ 371–72. Timberlake was charged with criminal mischief, rioting, participation in a riot, unlawful assembly, and failure to disperse. *Id.* ¶¶ 389, 399, 401. She alleges "[t]here was no probable cause" to charge her with these offenses because she was not engaged in any behavior defined in the relevant criminal statutes previously discussed with respect to Fugate's Count 1 claims. *Id.* ¶ 403.

First, Timberlake alleges Smith had no reasonable basis to believe she was engaged in criminal mischief because no law enforcement officer saw her destroy property or had any other "reason to believe [she was] involved in the destruction of property." ECF No. 95 at 13. Next, she contends Smith had no reasonable basis to believe she was rioting or unlawfully assembled. *See*

*id.* at 12. Although she was in a group of more than three persons, Timberlake alleges she was "not assembled with any persons who were acting in a violent manner." ECF No. 119 ¶ 375; *see also* ECF No. 95 at 12–13. Timberlake further states she was not acting violently or threateningly. ECF No. 119 ¶ 374. Finally, she alleges law enforcement officers had no reasonable basis to arrest her for failure to disperse because she was "not in the immediate vicinity of a riot or unlawful assembly" nor was there any order to disperse. *Id.* ¶ 376; ECF No. 95 at 13. At this stage, Timberlake alleges sufficient facts to support a plausible inference of unreasonable seizure in violation of the Fourth Amendment.   Timberlake plausibly alleges the totality of circumstances at the time of her arrest was not "sufficient to lead a reasonable person to believe" she had committed or was committing a criminal offense. *Cf. Ehlers*, 846 F.3d at 1009. As such, this aspect of Timberlake's Count 1 claim against Smith survives the motion to dismiss.

Timberlake also alleges Smith charged her with crimes without probable cause. ECF No. 119 ¶ 419. Timberlake provides no facts to support her allegation. She does not allege Smith filed any criminal complaints against her. She alleges "Defendant Police" booked her into the Polk County jail on charges of criminal mischief and rioting. *Id.* ¶ 389. She further alleges Nicolino filed a criminal complaint against her charging her with participation in a riot. *Id.* ¶ 399. She also alleges "Defendant Police" filed criminal complaints against her charging her with unlawful assembly and failure to disperse. *Id.* ¶ 401. Timberlake's complaint, however, is devoid of factual allegations substantiating a claim against Smith for charging her without probable cause. Accordingly, the motion to dismiss Count 1 against Smith is denied as to Timberlake's illegal seizure claim and granted as to her unlawful charging claim.

### 2.    Illegal seizure under the Iowa Constitution (Count 2)

Dunn, Fugate, and Timberlake bring claims against Callahan and Smith for illegal seizure directly under article I, section 8 of the Iowa Constitution. The Polk County Defendants argue

these claims must be dismissed for failure to allege sufficient facts to state valid claims. ECF No. 88-1 at 9–10. They also question whether Plaintiffs can even bring such claims, arguing the Iowa Supreme Court has only recognized "the potential existence of a direct cause of action for claims under the Iowa Constitution." *Id.* at 9 n.2.

In *Godfrey v. State*, a plurality of the Iowa Supreme Court found article I, sections 6 (equal protection) and 9 (due process) were self-executing provisions giving rise to a direct cause of action for damages against state officials acting in their official capacities. 898 N.W.2d 844, 871–72 (Iowa 2017). In reaching its holding, the *Godfrey* court relied on the "thoroughly well settled principle that violation of article I, section 8 gives rise to a cause of action." *Godfrey*, 898 N.W.2d at 862 (citing *State v. Tonn*, 191 N.W. 530 (Iowa 1923), *abrogated by State v. Cline*, 617 N.W.2d 277, 291 (Iowa 2000)). The *Godfrey* court stated the Iowa Supreme Court had previously found "that search and seizure provisions of the Iowa Constitution are self-executing." *Id.* at 863 (citing *Girard v. Anderson*, 257 N.W. 400, 403 (Iowa 1934)).

*Godfrey* was decided by a divided court, and one justice has recently expressed support for overturning it. *See Lennette v. State*, 975 N.W.2d 380, 402 (Iowa 2022) (McDonald, J., concurring) ("*Godfrey* was demonstrably erroneous, and this court should overrule it."). The Iowa Supreme Court has not explicitly extended the *Godfrey* decision to a claim brought pursuant to article I, section 8 of the Iowa Constitution.[4] Nor has the Court expressly recognized a direct constitutional tort action against municipal employees in their individual capacities. *See Wagner*

---

[4] The Southern District of Iowa has previously predicted the Iowa Supreme Court would recognize article I, section 8 to be self-executing. *See Meyer v. Herndon*, 419 F. Supp. 3d 1109, 1126–31 (S.D. Iowa 2019) (Rose, J); *see also Williams v. City of Burlington*, 516 F. Supp. 3d 851, 861 (S.D. Iowa 2021) (Rose, J). The Court is not bound by either decision. *See, e.g., Threadgill v. Armstrong World Indus. Inc.*, 928 F.2d 1366, 1372 (3d Cir. 1991) ("[I]t is clear that there is no such thing as 'the law of the district.'") (citing *United States v. Article of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (single district court decision has little precedential effect and is not binding on other district judges in the same district)).

*v. State*, 952 N.W.2d 843, 850 (Iowa 2020) ("We have never recognized a *Godfrey* claim against a government official in their individual capacity.").

"If the state supreme court has not decided the issue, [the federal court's] role is to predict how that court would rule." *Meyer v. McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 509 (8th Cir. 2020). Nevertheless, it is prudent to refrain from making predictions regarding unprecedented areas of Iowa law where unnecessary to the analysis of a disputed claim.[5] At this stage, the Court assumes without deciding the Iowa Supreme Court would recognize a direct constitutional tort claim under article I, section 8 against a municipal employee in their official or individual capacity. As such, the Court considers whether Dunn, Fugate, and Timberlake plausibly allege facts to support their state constitutional claims in Count 2.

Neither party advocates any state constitutional provision should be interpreted differently from its federal counterpart. The Iowa Supreme Court generally applies the substantive federal standards when a party alleges both federal and state constitutional claims but does not articulate a standard other than the federal approach. *See State v. Tyler*, 830 N.W.2d 288, 291–92 (Iowa 2013); *see also State v. Davis*, 304 N.W.2d 432, 434 (Iowa 1981) ("The Supreme Court of Iowa is the final arbiter of the meaning of the Iowa Constitution, but when the federal and state constitutions contain similar provisions, they are usually deemed to be identical in scope, import, and purpose."). Because article I, section 8 of the Iowa Constitution is "virtually identical" to the search and seizure provision of the Fourth Amendment, the Court analyzes Plaintiffs' state constitutional claims in the same manner as their federal counterparts in Count 1. *State v. Storm*, 898 N.W.2d 140, 147–48 (Iowa 2017).

---

[5] The Court notes it recently determined certification of a question to the Iowa Supreme Court was appropriate for the related question of whether the Iowa Constitution supports a direct cause of action under article I, section 17. *See* Order Mot. Dismiss, *Richardson v. Johnson*, No. 4:21-cv-00167-RGE-HCA (S.D. Iowa Sept. 12, 2022), ECF No. 21.

a.      Dunn

Dunn's Count 2 claim against Callahan for illegal seizure under the Iowa Constitution mirrors her claim in Count 1. ECF No. 119 ¶¶ 423–28. As previously explained, Dunn's claims against Callahan in Count 1 are dismissed for failure to state sufficient facts to support a plausible claim. Dunn alleges no additional facts to support Count 2.  Because the Court analyzes Dunn's Count 2 claim under the same standard applied to Count 1, it must fail as well. Accordingly, Dunn's claim against Callahan in Count 2 is dismissed for failure to state a claim upon which relief can be granted.

b.      Fugate

Fugate's Count 2 claim against Callahan for illegal seizure under the Iowa Constitution mirrors his claim in Count 1. *Id.* As discussed, Fugate alleges sufficient facts in Count 1 to establish plausible claims for arrest without probable cause and illegal seizure of property against Callahan under the Fourth Amendment. Because the Court analyzes Fugate's Count 2 claim under the same standard applied to Count 1, Fugate's claim against Callahan in Count 2 also survives the motion to dismiss to the extent the Iowa Supreme Court would recognize such a claim.

c.      Timberlake

Similarly, Timberlake's Count 2 claim against Smith for illegal seizure under the Iowa Constitution survives. Timberlake alleges sufficient facts in Count 1 to establish a plausible claim for illegal seizure against Smith under the Fourth Amendment. The Court analyzes Timberlake's Count II claim under the same standard applied to Count 1. Thus, Count 2 against Smith must also survive.

**3.      Malicious prosecution (Counts 7 and 12)**

To show a malicious prosecution claim under Iowa common law, a plaintiff must prove: "(1) a previous prosecution; (2) investigation of that prosecution by the defendant; (3) termination

of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff." *Whalen v. Connelly*, 621 N.W.2d 681, 687–88 (Iowa 2000) (quoting *Emps. Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996)). "Malice means any wrongful act which has been willfully and purposely done to the injury of another. There must be an improper purpose or motive." *Wilson v. Hayes*, 464 N.W.2d 250, 260 (Iowa 1990) (quoting *Brown v. Monticello State Bank*, 360 N.W.2d 81, 87 (Iowa 1984)). When a suit is brought against a public official, such as a law enforcement officer, malice must be demonstrated through "an affirmative showing" of "ill-will, hatred or other wrongful motives." *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975).

A state malicious prosecution claim is distinct from a § 1983 claim of malicious prosecution under the Fourth Amendment. *See generally Kurtz v. City of Shrewsbury*, 245 F.3d 753, 757–59 (8th Cir. 2001). Section 1983 only provides a remedy for violations of rights expressly secured by federal statutes or the Federal Constitution. *Id.* at 758. An allegation of malicious prosecution alone cannot sustain a claim under § 1983. *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013); *Kurtz*, 245 F.3d at 758.

Dunn's, Fugate's, and Timberlake's malicious prosecution claims in Counts 7 and 12 mirror one another and allege identical facts. The Court considers these claims together.

a.    Dunn

Dunn does not plausibly allege claims against Callahan for malicious prosecution under Iowa law or § 1983.  In Count 7, Dunn alleges "Defendants"—but not Callahan specifically—"acted with malice" in initiating prosecution against her. ECF No. 119 ¶ 467. Dunn, however, offers nothing additional to support this claim. The Court does not find any allegations within Dunn's complaint demonstrating "an affirmative showing" of Callahan's "ill-will, hatred or

other wrongful motives." *Vander Linden*, 231 N.W.2d at 906. The Court "is free to ignore . . . sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

As such, Dunn fails to allege sufficient facts to maintain Count 7. Count 12 against Callahan is dismissed because an allegation of malicious prosecution without more cannot sustain a claim under § 1983. *Joseph*, 712 F.3d at 1228. Dunn's complaint is wholly devoid of any factual allegations substantiating a claim of malicious prosecution. *See* ECF No. 119 ¶¶ 491–94. Accordingly, the Court dismisses Dunn's claims against Callahan in Counts 7 and 12.

### b.    Fugate

Fugate's claims against Callahan for malicious prosecution under Iowa law and § 1983 fail for the same reasons. Fugate alleges "Defendants"—but not Callahan specifically—"acted with malice" in initiating prosecution against him. ECF No. 119 ¶ 467. Fugate's legal conclusion, without more, cannot sustain a claim for malicious prosecution under Iowa law. As discussed, Fugate's malicious prosecution claim under § 1983 fails to state a claim for which relief can be granted. Accordingly, the Court dismisses Fugate's claims against Callahan in Counts 7 and 12.

### c.    Timberlake

Timberlake fails to plead sufficient facts to support claims against Smith for malicious prosecution under Iowa law and § 1983. Timberlake's claims against Smith mirror those made by Dunn and Fugate. *See* ECF No. 119 ¶¶ 463–68, 490–95. She alleges only that "Defendants" "acted with malice" in initiating her prosecution. *Id.* ¶¶ 467, 494. For the same reasons previously explained, these bare allegations are insufficient to establish malicious prosecution under Iowa law or § 1983. As such, the Court dismisses Counts 7 and 12 against Smith.

### 4.    False arrest and false imprisonment (Count 8)

False arrest and false imprisonment are legally indistinguishable. *Davis v. Dawson*,

33 F.4th 993, 1001 (8th Cir. 2022) (citing *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)). Under Iowa law, "false arrest is one way of committing the tort of false imprisonment—restraining freedom of movement." *Children v. Burton*, 331 N.W.2d 673, 678 (Iowa 1983); *see Sergeant v. Watson Bros. Transp. Co.*, 52 N.W.2d 86, 92-93 (Iowa 1952). "The essential elements of the tort of false arrest are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children*, 331 N.W.2d at 678–79. Where, as here, an officer performs an arrest without a warrant, the arresting officer bears the burden of proof to show justification for the arrest. *Id.* at 679. Although "the statutory standard for warrantless arrests under Iowa law is not identical to the federal constitutional standard," Iowa courts typically apply the reasonable grounds standard in the same manner as the probable cause and arguable probable cause standards applicable to § 1983 false arrest claims. *Veatch v. City of Waverly*, 858 N.W.2d 1, 7–8 (Iowa 2015); *see Children*, 331 N.W.2d at 680 ("If the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach.").

### a.   Dunn

Dunn brings a claim for false arrest against Callahan. ECF No. 119 ¶¶ 469–72. Dunn does not set forth sufficient facts to support a plausible claim for false arrest. She does not allege Callahan stopped her, restricted her movement, or transported her against her will. *See* ECF No. 119 ¶¶ 154, 156–61, 167, 169–70. In fact, Dunn does not allege Callahan directly interacted with her at all during her arrest. *See id.* The naked assertion that Callahan was proximate to Dunn during her arrest does not give rise to an inference of false arrest. As such, the Court dismisses Dunn's claim against Callahan in Count 8.

### b.   Fugate

Fugate brings a false arrest claim against Callahan. ECF No. 119 ¶¶ 469–72. Fugate alleges

Callahan "arrested [him], seized his firearm, and searched [Dunn's] vehicle." *Id.* ¶ 159. This factual allegation is sufficient to support the first element of false arrest: "detention or restraint against one's will." *Children*, 331 N.W.2d at 678–79. Fugate also alleges sufficient facts to support the second element of his false arrest claim: "the unlawfulness of such detention or restraint." *Id.* "An arrest is lawful if the facts available to the officer at the time of arrest provide reasonable ground for believing an indictable offense has occurred and the arrestee committed it." *Veatch*, 858 N.W.2d at 9. Although the reasonable grounds standard is "not identical to" the probable cause standard under the Fourth Amendment, Iowa courts typically apply the standards in the same manner. *Id.* at 7–8. Thus, Count 8 survives against Callahan for the same reasons Counts 1 and 2 survive. Because Fugate pleads sufficient facts to allege Callahan lacked probable cause to arrest him for criminal mischief, rioting, participation in a riot, unlawful assembly, and failure to disperse, the Court finds he pleads sufficient facts to establish Callahan lacked reasonable grounds to arrest him for these same offenses. Therefore, dismissal of Fugate's claim against Callahan in Count 8 is not warranted.

c.    Timberlake

Timberlake brings a false arrest claim against Smith. ECF No. 119 ¶¶ 469–72. For the reasons explained above, Timberlake alleges sufficient facts to plausibly state a claim for false arrest. Timberlake's allegation that Smith arrested her is sufficient to support the first element of a false arrest claim at this stage. *Id.* ¶ 397. As discussed in relation to Count 1, Timberlake provides sufficient facts to allege Smith lacked probable cause to arrest her. Because Iowa courts typically apply the federal probable cause standard to state law false arrest claims and Timberlake's Count 1 claim against Smith may proceed, it follows Count 8 against Smith may proceed as well.

**5.    Assault and battery (Count 9)**

To set forth a claim for assault, a plaintiff must show the defendant 1) performed an act

intended to put another in fear of physical pain or injury; or 2) performed an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive and the victim reasonably believed the act would be carried out immediately. Iowa Code § 708.1; *see also Matthews v. Desplanques*, No. 08-0950, 2009 WL 1066515, at *2 (Iowa Ct. App. 2009) (explaining "the elements of assaultive conduct defined in Iowa Code section 708.1 are the same whether brought in a civil petition or a criminal indictment"). To set forth a claim for battery, a plaintiff must show the defendant committed an intentional act resulting in bodily contact with the plaintiff causing physical injury or resulting in bodily contact which a reasonable person would deem insulting or offensive. *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 388–89. (Iowa 2000).

### a.   Fugate

Fugate alleges assault and battery claims against Callahan. He makes no factual allegations supporting any of the elements of an assault or battery claim. *See generally* ECF No. 119 ¶¶ 142–92, 473–77. He alleges Callahan's intentional acts "resulted in bodily contact . . . that a reasonable person would deem insulting or offensive." *Id.* ¶ 476. But Fugate does not specify what bodily contact Callahan made with him. *See generally id.* ¶¶ 142–92, 473–77. Nor does he describe how Callahan's acts were "insulting or offensive." *See id.* Fugate alleges he "ha[s] in the past and will in the future suffer injuries and damages" because of Callahan's actions, but provides no facts regarding what, if any, injuries he suffered. Nor does he allege Callahan performed any act intended to put in him fear of pain or injury. *See id.* Fugate contends he plausibly states claims for assault and battery because he sufficiently "pl[eaded] facts to demonstrate the Polk County Defendants' involvement in an unjustified use of force." ECF No. 95 at 17. These arguments, however, are no longer applicable because Fugate dropped his excessive force claim against Callahan. *Compare* ECF No. 30 ¶¶ 430–41 *with* ECF No. 119 ¶¶ 429–40. Fugate's claim that

21

Callahan arrested him—without more—is insufficient to establish a legally cognizable claim for assault or battery. ECF No. 119 ¶ 159. Accordingly, Count 9 against Callahan is dismissed.

b.      Timberlake

Timberlake alleges assault and battery claims against Callahan. Her allegations are identical to Fugate's allegations. Thus, her claim suffers from the same deficiencies. She provides no facts supporting the elements for either assault or battery. *See generally id.* ¶¶ 368–88, 473–77. She does not specify what bodily contact Smith made with her. *See id.* She does not describe how Smith's actions were "insulting or offensive." *See id.* ¶ 476. She provides no facts describing what past or future injuries she suffered. *See generally id.* ¶¶ 368–88, 473–77. She does not allege Smith performed any act intended to put her in fear of pain or injury. *See id.* Thus, Count 9 is dismissed against Smith for failure to state a claim upon which relief can be granted.

**6.      Negligence, gross negligence, and recklessness (Count 10)**

"Negligence is a common-law tort that is generally defined as conduct that 'falls below the standard established by law for the protection of others against unreasonable risk of harm.'" *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 37 (Iowa 1982) (quoting Restatement (Second) of Torts § 282). "An element of negligence is a duty or standard of care owed by the actor to the victim." *Id.* (citation omitted). To prove a negligence claim, a plaintiff must establish the defendant owed them a duty of care, the defendant breached that duty, the defendant's breach was the actual and proximate cause of the plaintiff's injuries, and the plaintiff suffered damages. *See Virden v. Betts & Beer Constr. Co.*, 656 N.W.2d 805, 807 (Iowa 2003); *Kolbe v. State,* 625 N.W.2d 721, 725 (Iowa 2001).

Under Iowa law, persons taken into custody are owed an ordinary, common law duty of care. *Gerard v. City of N. Liberty*, No. 16-1885, 2017 WL 3525283, at *2 (Iowa Ct. App. 2017) (considering negligence claim against police officer and evaluating what duty of care is owed);

*Smith v. Miller*, 40 N.W.2d 597, 599 (Iowa 1950) ("When a sheriff, by virtue of his office, has arrested and imprisoned a human being, he is bound to exercise ordinary and reasonable care, under the circumstances of each particular case, for the preservation of his life and health."). That duty of care extends to sheriff's deputies, such as Callahan and Smith. *See Deppe v. Poweshiek Cnty.*, 542 N.W.2d 6, 8–9 (Iowa Ct. App. 1995) (finding duty of care extended to sheriff's deputies).

There is no common law claim in Iowa for gross negligence. *Lukken v. Fleischer*, 962 N.W.2d 71, 81 (Iowa 2021). The Iowa Supreme Court has acknowledged that gross negligence "appears frequently in our cases interpreting statutes that employ that term." *Id.* But the Court "warned that conceptions of 'gross negligence' deriving from statutory uses of that term are not to be applied beyond those statutes." *Id.* Plaintiffs have not cited a statutory basis for their assertion that gross negligence applies in the instant case. Therefore, the Court reads the second amended complaint as failing to state a claim for gross negligence, as distinct from negligence. Likewise, Plaintiffs have failed to explain the recklessness claim in their briefing. Because the Court cannot discern the nature of the alleged recklessness claim, the Court concludes the second amended complaint fails to state such a claim.

a.    Dunn

Dunn alleges claims for negligence, gross negligence, and recklessness against Callahan. Dunn fails to articulate any action or inaction by Callahan below the appropriate duty of care. *See* ECF No. 119 ¶¶ 478–84. Dunn's "naked assertions" devoid of "factual enhancement" are not sufficient to establish a plausible claim for negligence. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Accordingly, the Court dismisses Dunn's claims against Callahan in Count 10.

b.    Fugate

Fugate's negligence claims against Callahan are equally devoid of "factual enhancement."

23

*Id.* Fugate does not provide any facts supporting an inference Callahan failed to exercise the appropriate duty of care. *See* ECF No. 119 ¶¶ 478–84. He provides no factual allegations as to how Callahan violated his duty of care. *Id.* Accordingly, the Court dismisses Fugate's claims against Callahan in Count 10.

c.      Timberlake

Timberlake similarly fails to plead facts sufficient to establish a plausible claim of negligence. She does not assert Smith took any action that fell below his duty of "ordinary and reasonable care." *See* ECF No. 119 ¶¶ 478–84; *Smith*, 40 N.W.2d at 599. Timberlake's bare allegations are insufficient to raise a plausible inference of negligence. Accordingly, the Court dismisses Count 10 against Smith.

## C.    Polk County

The Polk County Defendants argue Counts 5 and 6 should be dismissed because Plaintiffs fail to state plausible claims for deliberately indifferent policies, practices, customs, training, and supervision under 42 U.S.C. § 1983 and article I, sections 6, 7, and 8 of the Iowa Constitution. The Polk County Defendants seek to dismiss Count 11 for respondeat superior liability for the same reason.

### 1.    *Monell* liability (Count 5)

Plaintiffs assert a claim under § 1983 against Polk County for deliberate indifference in violation of the First, Fourth, Fifth, and Fourteenth Amendments.

In order to be subject to § 1983 liability, Plaintiffs must demonstrate Polk County has a "custom" or "policy" that caused Plaintiffs' injuries. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To prove a municipal custom exists, Plaintiffs must establish:

      (1) [t]he existence of a continuing, widespread, persistent pattern of

24

> unconstitutional conduct by the governmental entity's employees; (2)
> deliberate indifference to, or tacit authorization of, such conduct by the
> governmental entity's policymaking officials after notice to the officials of that
> misconduct; and (3) the plaintiff[s'] injury by acts pursuant to the
> governmental entity's custom, that is, proof that the custom was the moving
> force behind the constitutional violation.

*Ward v. City of Des Moines*, 184 F. Supp. 2d 892, 897 (S.D. Iowa 2002). "To prove the existence

of a policy, a plaintiff must point to 'an official policy, a deliberate choice of a guiding principle

or procedure made by the municipal official who has final authority regarding such matters.'"

*Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018) (quoting *Schaffer v. Beringer*,

842 F.3d 585, 596 (8th Cir. 2016). "[T]he plaintiff must prove that the policy was the 'moving

force' behind a constitutional violation." *Id.* Absent evidence of a facially unlawful policy or

custom, Plaintiffs must "demonstrate some municipal action or inaction, taken with deliberate

indifference as to its known or obvious consequences, caused [their] injuries." *Atkinson v. City of

Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quotation marks omitted) (quoting *Bd. of

Cnty. Comm'rs*, 520 U.S. at 407). "'[D]eliberate indifference' is a stringent standard of fault,

requiring proof that a municipal actor disregarded a known or obvious consequence of his action."

*Bd. of Cnty. Comm'rs* 520 U.S. at 410.

The Polk County Defendants argue Polk County cannot be liable under § 1983 because

Plaintiffs have not identified any specific policy or custom responsible for the alleged

constitutional violations. ECF No. 88-1 at 12. Plaintiffs argue the email from Assistant Polk

County Attorney Noble to the Des Moines Police Department offering post-arrest advice on

how to charge Plaintiffs constituted an official policy that resulted in their unlawful arrests.

ECF No. 95 at 16. Noble's email instructed officers to charge persons arrested the night of

the protest—"where appropriate"—with rioting, failure to disperse, and unlawful assembly,

and provided sample language for law enforcement officers to use in their affidavits. ECF

No. 119 ¶¶ 121–23; Defs.' Reply Br. Supp. Mot. Dismiss 2, ECF No. 96. Law enforcement officers allegedly filed complaints in Dunn's, Fugate's, and Timberlake's cases using the exact language from Noble's email. ECF No. 95 at 16. Plaintiffs claim Noble's guidance defied Iowa's riot statute. *See Williams v. Osmundson*, 281 N.W.2d 622, 624 (Iowa 1979) (holding "a defendant does not Join in a riot or Remain a part of a riot, unless he conducts himself in a violent manner"). Plaintiffs therefore allege Polk County "maintained and enforced a policy . . . that it was lawful to arrest anyone present at the scene [of the protest] without evidence they conducted themselves in a violent manner." ECF No. 119 ¶ 124; *see also* ECF No. 95 at 6.

Plaintiffs have not pleaded facts sufficient to support a § 1983 claim against Polk County. Plaintiffs do not allege facts that, if true, would establish the existence of a policy, practice, or custom condoning unconstitutional seizures. First, Noble's email could not constitute an official policy, practice, or custom causing Plaintiffs' arrests because the arrests they challenge were made hours prior to the email's receipt. ECF No. 88-1 at 12. Nothing in the language of Noble's email indicates Polk County had an existing policy of depriving individuals of their constitutional rights. Noble's email specifically advised law enforcement officers to use his proffered charging language only "where appropriate." ECF No. 96 at 2. Plaintiffs' naked assertions that Noble's email ratified the arrests of Plaintiffs made hours earlier amounts to bald legal conclusions that are unsupported by factual allegations.

Second, Noble's email could not constitute an official policy, practice, or custom generating the charges filed against Plaintiffs because the Polk County Defendants did not actually file any of the charges. Noble emailed Nicolino his guidance for charging persons arrested the night of the protest. ECF No. 119 ¶ 122. Nicolino, George, and Des Moines Police Officer Brian Buck allegedly "refiled criminal complaints" against the arrested individuals. *Id.* ¶ 126. Neither these facts nor any others suggest Polk County maintained a policy commanding Polk County law

enforcement officers to file criminal charges against persons contrary to Iowa law.

Plaintiffs have pleaded no factual allegations demonstrating Polk County received notice of a pattern of unconstitutional acts. Nor have they pleaded facts supporting a finding of Polk County's deliberate indifference to unconstitutional acts. Thus, Plaintiffs' complaint does not plausibly plead a claim for § 1983 liability against Polk County. As such, Count 5 must be dismissed against Polk County for failure to state a claim upon which relief may be granted.

### 2. Deliberately indifferent policies, practices, customs, training, and supervision under Iowa law (Count 6)

Plaintiffs also bring a deliberate indifference claim under article I, sections 6, 7, and 8 of the Iowa Constitution. As the Court discussed with respect to Count 2, the law on bringing direct *Godfrey* claims under the Iowa Constitution is unsettled. Assuming without deciding a deliberate indifference claim can be brought under the state constitution, the Court considers whether Plaintiffs plausibly allege facts to support such a claim against Polk County.

The parties do not set forth a specific standard for a deliberate indifference claim under Iowa law. *See generally* ECF No. 119; ECF No. 88-1. The parties have not asserted, and the Court has not discovered, any authority suggesting Iowa courts would interpret a deliberate indifference claim under the state constitution "any differently than federal courts would under federal law." *Saunders v. Thies*, 38 F.4th 701, 715 (8th Cir. 2022). Accordingly, the Court applies federal law to Plaintiffs' claim under the Iowa Constitution and analyzes Count 6 under the standard set forth in Count 5.

In Count 6, Plaintiffs rest on the same allegations as in Count 5. *See* ECF No. 119 ¶¶ 441–62. Because Plaintiffs fail to allege sufficient facts to establish a claim under federal law in Count 5, it follows Count 6 fails to allege facts supporting a claim under Iowa law. Accordingly, Count 6 against Polk County is dismissed

27

### 3. Respondeat superior (Count 11)

Plaintiffs assert a claim for respondeat superior liability under Iowa Code § 670.2 against Polk County. ECF No. 119 ¶¶ 485–89. The doctrine of respondeat superior is a common law theory of liability which holds employers vicariously liable for the acts or omissions of their officers and employees committed in the scope of their employment. *See, e.g.*, *Jones v. Blair*, 387 N.W.2d 349, 355 (Iowa 1986). Plaintiffs allege Callahan and Smith, acting within the scope of their employment as Polk County Sheriff's Deputies, committed "various torts, including assault and battery, negligence, and violations of the Iowa Constitution." ECF No. 95 at 18; ECF No. 119 ¶¶ 487–88. Plaintiffs contend respondeat superior liability applies to claims brought under the Iowa Constitution and statutory law. ECF No. 95 at 18. Polk County argues Iowa has wholly abrogated the doctrine of respondeat superior. ECF No. 88-1 at 16. It contends the Iowa Municipal Tort Claims Act sets forth the specific grounds and limitations of Polk County's liability for the acts and omissions of its employees. *Id.*

The Court finds Fugate and Timberlake state plausible claims against Callahan and Smith in Counts 1, 2, and 7. As Plaintiffs acknowledge, respondeat superior cannot apply to Count 1 because this claim arises under the Federal Constitution. *See Monell*, 436 U.S. at 691 ("a municipality cannot be held liable under § 1983 on a respondeat superior theory"); *see also* ECF No. 95 at 18. However, given the unsettled nature of Plaintiffs' constitutional tort claims in Count 2, the Court finds dismissal of Count 11 is not warranted at this stage. As such, the Court denies Polk County's motion to dismiss Count 11 for failure to state a claim.

## V. CONCLUSION

The Court grants in part and denies in part the Polk County Defendants' Motion to Dismiss. The Court dismisses Dunn's claims against Callahan in Counts 1, 2, 7, 8, 10, and 12 for failure to state a claim upon which relief may be granted. The Court dismisses Fugate's claims against

Callahan and Timberlake's claims against Smith in Counts 7, 9, 10, and 12 for failure to state a claim upon which relief may be granted. The Court finds dismissal of Fugate's claims against Callahan and Timberlake's claims against Smith in Counts 1, 2, and 8 is not warranted. The Court dismisses Counts 5 and 6 against Polk County for failure to state a claim upon which relief may be granted. The Court finds dismissal of Count 11 against Polk County is not warranted.

**IT IS ORDERED** that Defendants Nick Smith, Ken Callahan, and Polk County, Iowa's Motion to Dismiss, ECF No. 88, is **GRANTED IN PART AND DENIED IN PART**:

Count 1 is **DISMISSED** as to Plaintiff Cierra Dunn's claim against Defendant Ken Callahan.

Count 1 is **DISMISSED** as to Plaintiff Trentae Fugate's claim against Defendant Ken Callahan for unlawful charging.

Count 1 is **DISMISSED** as to Plaintiff Emma Timberlake's claim against Defendant Nick Smith for unlawful charging.

Count 2 is **DISMISSED** as to Plaintiff Cierra Dunn's claim against Defendant Ken Callahan.

Count 5 is **DISMISSED** as to Defendant Polk County, Iowa.

Count 6 is **DISMISSED** as to Defendant Polk County, Iowa.

Count 7 is **DISMISSED** as to Defendant Ken Callahan.

Count 7 is **DISMISSED** as to Defendant Nick Smith.

Count 8 is **DISMISSED** as to Plaintiff Cierra Dunn's claim against Defendant Ken Callahan.

Count 9 is **DISMISSED** as to Defendant Ken Callahan.

Count 9 is **DISMISSED** as to Defendant Nick Smith.

Count 10 is **DISMISSED** as to Defendant Ken Callahan.

Count 10 is **DISMISSED** as to Defendant Nick Smith.

Count 12 is **DISMISSED** as to Defendant Ken Callahan.

Count 12 is **DISMISSED** as to Defendant Nick Smith.

Consistent with the analysis set forth above, all other contested claims against the Polk County Defendants remain.

**IT IS FURTHER ORDERED** that Plaintiff Tyler Robinson McCuddin's motion to dismiss all claims against Defendant Brian Buck, ECF No. 131, is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs must file a Third Amended Complaint correcting the caption and removing the claims dismissed by this order, making no other changes.

**IT IS FURTHER ORDERED** that Plaintiffs' purported errata, ECF No. 133, is **STRICKEN**. The Clerk of Court is ordered to strike it from the record.

**IT IS SO ORDERED.**

Dated this 6th day of October, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE